**Edwin MEDINA, Petitioner–Appellee,**

v.

**J.P. KEANE, Respondent–Appellant.**

**No. 1365, Docket 90–2477.**

United States Court of Appeals,
Second Circuit.

Argued April 19, 1991.

Decided June 17, 1991.

Billie Manning, Asst. Dist. Atty., N.Y. City (Robert T. Johnson, Dist. Atty., Bronx, of counsel), for respondent-appellant.

Roger Bennett Adler, N.Y. City, for petitioner-appellee.

Before MESKILL, PRATT, and WALKER, Circuit Judges.

PRATT, Circuit Judge:

Respondent-appellant J.P. Keane appeals from a judgment entered in the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge*, granting petitioner-appellee Edwin Medina's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The district court held that a post-arrest statement made by Medina was elicited in violation of his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the admission of the statement at Medina's trial was not harmless error. The state argues on this appeal that the admission of the statement was harmless error. We agree, and therefore, we reverse the judgment and remand to the district court for entry of judgment denying Medina's petition.

## BACKGROUND

On December 7, 1984, Medina was arrested along with Raymond Avila and Pedro Romero for robbing and assaulting Clyde Burge at a subway station in Bronx County, New York. Burge had been at Yonkers Raceway that night carrying approximately $9,800 in cash from his savings. Almost all his cash was in the form of $100 bills, organized into bundles of ten bills each, folded so that "the green was facing out".

---

While at the track, Burge won an additional $520, which he collected in $100 bills.

Medina and Avila accosted Burge while he was climbing the stairs to the subway platform, took $5,000 from Burge's left pocket, and fled. Two police officers patrolling the area saw Medina and Avila flee and proceeded to pursue them. The officers eventually stopped "a blue gypsy cab station wagon" with three passengers, which had been identified to them as carrying the suspects. Medina tried to flee as the police approached, but was eventually arrested, along with Avila and Romero. Ten $100 bills were recovered from the floor of the cab; some of the bills were folded the same way as Burge had folded his bills and some were creased as though they had once been folded that way.

The police then took the three men back to the scene of the crime, where Burge identified Medina and Avila as the two men who had attacked him on the stairs. A subsequent search at the precinct revealed that Medina was carrying $400 in $100 bills and that Romero was carrying $1,000 in $100 bills. Only a single dollar bill was found on Avila.

Officer Jose Rivera read *Miranda* warnings to each individual. In response to questioning by Officer Rivera, Medina refused to make a statement to officials without the assistance of an attorney. Later that evening, Officer Raymond Gallagher independently began interviewing the three suspects. He advised each suspect of his *Miranda* rights, ascertained that they understood them, proceeded to obtain oral waivers of their rights, and elicited statements from each of them, including Medina. Medina admitted that he had been at Yonkers Raceway that night and that he was returning to the Bronx by way of a taxi shared with Avila and Romero at the time he was arrested. He denied knowing either Avila or Romero and denied participating in the robbery. Avila and Romero gave the same story.

A joint trial of Medina and Romero was held in the New York Supreme Court, Bronx County. The court had previously denied Medina's motion to suppress the post-arrest statements. At trial, the state introduced Medina's statement through the testimony of Officer Gallagher on their direct case. Medina then testified in his own defense that, on December 7, 1984, his common law wife had given him $800 to secure an apartment, but that he had gone to Yonkers Raceway instead, where he lost $400 betting on horses. The jury convicted Medina of robbery in the first degree. Romero was convicted of criminal possession of stolen property in the first degree. Avila had pled guilty.

Medina appealed his conviction to the New York Supreme Court, Appellate Division, First Department, which unanimously affirmed the judgment of conviction. *People v. Medina*, 141 A.D.2d 1010, 530 N.Y. S.2d 924 (1st Dept.1988). His application for leave to appeal to the New York Court of Appeals was denied. *People v. Medina*, 72 N.Y.2d 1047, 534 N.Y.S.2d 947, 531 N.E.2d 667 (1988).

Romero had also appealed his conviction, and a different panel of the Appellate Division had reversed his conviction on the ground that his post-arrest statement had been taken in violation of his right to counsel and such admission was not harmless error. *People v. Romero*, 137 A.D.2d 450, 524 N.Y.S.2d 712 (1st Dept.1988).

Medina then filed this petition for habeas relief on the ground that the use of his post-arrest statement at trial violated his sixth amendment right to counsel and mandated habeas relief. The district court found that Medina's post-arrest statement was elicited in violation of his sixth amendment right to counsel and that the admission of that statement at trial was not harmless error. Therefore, the court granted Medina's petition for writ of habeas corpus. The state now appeals.

## DISCUSSION

This appeal raises the narrow issue of whether Medina's post-arrest statement, taken in violation of his sixth amendment right to counsel, constitutes harmless error. There is no dispute that Officer Gallagher's interrogation of Medina, after Medi-

na had invoked his *Miranda* right to remain silent until an attorney was present, violated Medina's constitutional rights. The sole question is whether admission of the statements at trial after such a violation was harmless error. We conclude that it was.

Harmless error analysis is applicable in cases where an incriminating statement was obtained and introduced in circumstances that violated the defendant's sixth amendment right to counsel. *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972). The test for harmless error "is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *Anderson v. Smith,* 751 F.2d 96, 105 (2d Cir.1984). "The question is not whether there is legally 'sufficient evidence [of guilt] on which the accused could have been convicted without the evidence complained of.'" *Anderson,* 751 F.2d at 105 (quoting *Fahy,* 375 U.S. at 86, 84 S.Ct. at 230).

The district court here found that there was a reasonable possibility that Medina's post-arrest statement may have contributed to his conviction, even though the court conceded that Medina might have been convicted without the statement in evidence. The court relied heavily on language in the case law emphasizing that a court should not focus on whether there is sufficient evidence of guilt, but on whether there was a reasonable possibility that the disputed evidence could have contributed to the conviction. *See Anderson,* 751 F.2d at 105. Thus, the district court found that the use of Medina's statement admitting his presence at Yonkers Raceway shortly before the crime may have contributed to his conviction because it served to place Medina where the victim had also been present.

■ We do not think that the district court's application of the harmless error standard was correct in this case. In the first place, the district court appears to have been influenced by the Appellate Division's conclusion that co-defendant Romero's post-arrest statement, also taken in violation of his sixth amendment rights, was not harmless error. This was inappropriate. In conducting harmless error analysis, the evidence as to each defendant must be considered separately. *Cf. United States v. Elkins,* 774 F.2d 530 (1st Cir. 1985). Moreover, the evidence of co-defendant Romero's guilt was different from that of Medina's. In particular, the victim identified Medina, although not Romero, as one of his assailants.

■ Further, the district court appears to have over-emphasized the importance of the post-arrest statement's possible contribution to Medina's conviction without considering the reasonableness of that possibility. The Supreme Court has stated that "[j]udicious application of the harmless-error rule does not require that we indulge assumptions of irrational jury behavior when a perfectly rational explanation for the jury's verdict, completely consistent with the judge's instructions, stares us in the face." *Schneble,* 405 U.S. at 431–32, 92 S.Ct. at 1059. In other words, we ask whether "the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony * * * been excluded", *id.* at 432, 92 S.Ct. at 1060, and we conclude here that they would find that the state had proved its case beyond a reasonable doubt even without the post-arrest statement.

It is important to keep in perspective the nature of Medina's uncounseled statement to the police. It certainly did not carry the devastating impact that a confession would; it is difficult to perceive whether or not it was even incriminatory. Medina merely placed himself at Yonkers Raceway, the same place the victim had been before the victim took a bus to the subway station where the assault and robbery occurred. At most the statement provided the jury with a remote, ambiguous link between Medina and the victim. Assuming for purposes of this appeal that the statement might be regarded as incriminatory, however, we still find that its admission

was harmless error. Medina himself seems to have viewed his statement as helpful, not harmful. Originally he made the statement as part of his attempt to exonerate himself in the eyes of the police. At trial, he took the stand and repeated the same story.

When asked at oral argument why Medina embraced the statement he now claims should have been excluded from trial, his counsel stated that the state's use of the statement on their direct case forced Medina to take the stand in his defense. We think this argument is disingenuous. Medina made no attempt to explain the statement when he testified; he was merely trying to tell the jury his side of the story. The record reveals that Medina's testimony was the result of a tactical decision to persuade the jury that he had not committed the crime for which he was charged.

Furthermore, the state's evidence of Medina's guilt demonstrates that there could not be any "reasonable possibility" that his post-arrest statement contributed to his conviction. When apprehended, Medina had $400 in his pocket in $100 bills, folded in the same way as the victim's money; he was identified by the victim in a show-up immediately after his arrest; and he was caught fleeing from the blue automobile which had been identified to the police as carrying the people who committed the crime and in which more of the victim's money was found. An average jury would certainly conclude from this evidence that Medina had committed the crime with which he was charged. Medina's acknowledgment that he had been at Yonkers Raceway added nothing of incriminatory significance to the picture. We thus conclude "on the basis of 'our own reading of the record and on what seems to us to have been the probable impact * * * on the minds of an average jury' ", *Schneble*, 405 U.S. at 432, 92 S.Ct. at 1060 (quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)), that the formal violation of *Miranda* in this case resulted in no harm that justifies the grant of habeas relief.

## CONCLUSION

We reverse the judgment of the district court and remand for entry of judgment denying the petition for writ of habeas corpus.