**Markeith BOYD, Petitioner,**

v.

**Kathleen HAWK, Commissioner, Federal Bureau of Prisons, Defendant.**

**No. 94 Civ. 7121 (DAB).**

United States District Court,
S.D. New York.

May 1, 1997.

Markeith Boyd, Phoenix, AZ, Pro Se.

Valerie Singleton, Asst. Atty. Gen., New York City, for Defendant.

## *ORDER*

BATTS, District Judge.

On July 24, 1996, Magistrate Judge Andrew J. Peck issued a Report and Recommendation recommending that Petitioner's habeas corpus petition be denied. *See* 28 U.S.C. § 636(b)(1)(c); Local Civil Rule 72.1(c). Petitioner has filed objections to the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C) requires the Court to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a de novo review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); *see also* Local Civil Rule 72.1(c).

The facts in this matter are sufficiently set forth in Judge Peck's Report and Recommendation and will not be repeated here. Judge Peck addressed the following three claims raised by Petitioner: (1) "the trial court erred in denying Boyd's motion to suppress certain statements made in violation of his right to remain silent"; (2) Petitioner "received ineffective assistance of trial counsel"; and (3) "the court failed to inspect grand jury minutes, abrogating the court's jurisdiction, and violating the due process and equal protection clauses of the Constitution."

In discussing Petitioner's claim that the trial court erred in denying his motion to suppress statements made in violation of Petitioner's right to silence, Judge Peck applied the harmless error standard set forth in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"). On collateral habeas corpus review, the onerous *Chapman* standard has been replaced by the *Kotteakos* harmless-error standard, which examines whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Under this standard, a Petitioner is not entitled to habeas relief based on trial error unless he or she can establish that the error resulted in actual prejudice. *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722.

Applying the *Kotteakos* harmless-error standard to Petitioner's claim that the trial court erred in denying his motion to suppress statements, this Courts nevertheless reaches the same conclusion as Judge Peck did in his Report and Recommendation, and finds that the trial court's admission of Petitioner's statements was harmless error. The Court concludes that, under the *Kotteakos* harmless-error standard, the trial court's error in admitting Petitioner's statements did not have a substantial and injurious effect or influence in determining the jury's verdict. The Court thus adopts and affirms the recommendations of Judge Peck in their entirety.

Petitioner's habeas petition is denied in its entirety. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *See also Rodriquez v. Scully,* 905 F.2d 24 (2d Cir.1990) (per curiam) (discussing certificate of probable cause under standard prior to amendment of 2253); *Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir.1979). The Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

*REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

By Report and Recommendation dated May 7, 1996, I recommended that the Court deny petitioner Markeith Boyd's petition for a writ of habeas corpus because it was a "mixed" petition containing both exhausted and unexhausted claims. On May 20, 1996, Boyd filed a document styled "Objections to Report and Recommendation" that requested that his petition be deemed amended to delete all unexhausted claims. By Order dated May 31, 1996, 1996 WL 406680, Judge Batts affirmed and adopted my Report and Recommendation and re-referred the case to me to consider Boyd's exhausted claims on the merits.

This Report and Recommendation, therefore, considers the merits of the following claims raised by Boyd: (1) "the trial court erred in denying Boyd's motion to suppress certain statements made in violation of his right to remain silent"; (2) he "received ineffective assistance of trial counsel"; and (3) "the court failed to inspect grand jury minutes, abrogating the court's jurisdiction, and violating the due process and equal protection clauses of the Constitution." (Boyd's

5/20/96 "Objections," amending Petition, dated 9/16/94, ¶¶ 12(a), 12(f), 12(g) & 12(i).)[1]

For the reasons set forth below, I recommend that Boyd's petition for a writ of habeas corpus be denied.

## FACTS

### The Robberies

On six separate occasions between August 20, 1989 and August 31, 1989, Boyd robbed three A to Z Luggage stores located in Manhattan. (*E.g.*, Trial Transcript ["Tr."] 22.)

At 9:30 A.M. on August 20, 1989, Boyd entered the A to Z Luggage store on 7th Avenue and 52nd Street. (Tr. 55–57, 200–03.) Boyd displayed a silver gun and demanded money from store employee Ghislaine Viard. (Tr. 57–59.) Viard gave Boyd the money, Boyd fled and Viard called the police. (Tr. 58.)

Later on August 20, 1989, at 5:00 P.M., Boyd robbed an A to Z Luggage store on 5th Avenue. (Tr. 112–14, 127.) Boyd displayed a silver gun, said this was a robbery, and ordered employees Phil Majeski and Leon Burt to give him the money from the cash register, as well as the prior business day's receipts. (Tr. 114–17, 131–33.) Boyd also demanded Majeski and Burt's personal money. (Tr. 117–18, 134.) Majeski and Burt surrendered the prior business day's receipt and about $220 of their personal money. (Tr. 117–19, 134–36.) Boyd left the store, and the police were called. (Tr. 119.)

On August 24, 1989 at 9:30 A.M., Boyd returned to the 7th Avenue store, again displaying a silver gun and demanding money from the cash register. (Tr. 63, 165, 205–06.) Viard and another employee, Benny Rosas, recognized Boyd from the August 20, 1990 robbery. (Tr. 63–64, 205–06, 216.) The store manager, Howard Slotnick, gave the money to Boyd, who fled; Slotnick called the police. (Tr. 63–64, 166–68.)

Five days later, on August 29, 1989 at 8:30 A.M., Boyd walked into the A to Z Luggage store on Beaver Street. (Tr. 30–31, 37, 143–44.) Peppy Feller, an employee, recognized Boyd as an acquaintance of a former store employee. (Tr. 31–33, 49, § 1.) Boyd pointed a silver gun at another employee, Sol Tabakin, and demanded money from the cash register. (Tr. 33, 41–43, 45, 87, 144–46.) Tabakin gave Boyd the money from the register, Boyd fled and Tabakin called the police. (Tr. 34, 44–46, 146.)

At 5:00 P.M. on August 29, 1989, Boyd returned to the Beaver Street store, again aimed a gun at Tabakin and demanded the money from the cash register. (Tr. 90–91, 146.) Tabakin and Norman Spector, another employee, recognized Boyd from that morning's robbery. (Tr. 90, 146.) Because the cash register jammed, Boyd took a bag of money from a drawer near the cash register and fled. Tabakin called the police. (Tr. 91–92, 146–47.)

On August 31, 1989 at 7:30 P.M., Boyd returned to the 7th Avenue store. (Tr. 168–69, 209.) Boyd pointed "the same silver handgun that he had previously" at Slotnick and demanded money. (Tr. 169–70, 209–10.) Slotnick and Rosas recognized Boyd from the previous robberies. (Tr. 168, 209.) Slotnick gave Boyd the money from the cash register, and Boyd fled. (Tr. 170, 211.) Slotnick called the police while Rosas followed Boyd. Rosas saw Boyd get into a car, noted the car's license plate number, and gave it to the police. (Tr. 170–71, 211–14, 244–45.) The police traced the car to Budget Rent-a-Car, who advised the police that the car was rented to a woman and that Boyd was listed as a second driver on the rental agreement. (Tr. 245–47, 250–51.)

### Boyd's Arrest

The police showed Rosas and Slotnick a photo array, and they identified Boyd's photo

1. Boyd also continues to raise a general denial of due process and equal protection claim. (Boyd Objections at 2, incorporating Petition ¶ 12(j).) As noted in my May 7, 1996 Report and Recommendation: "Claim 9 alleges denial of due process and equal protection. Boyd's Petition makes clear, however, that this relates back to his sentencing, grand jury, *Rosario* and ineffective assistance claims (Petition at p. 10), and this is not really a separate claim." (Report & Recommendation at p. 18 n. 14.) Accordingly, the Court will not separately discuss this claim but will analyze it under the grand jury and ineffective assistance of counsel claims, and deem it withdrawn as to the withdrawn sentencing and *Rosario* claims which are unexhausted.

as that of the robber. (Tr. 184, 241–42, 248–49.) Boyd was arrested at around 12:30 P.M. on September 5, 1989 by Detectives Michael Kennedy and Mordecai Dzihansky. (Tr. 254–56, 263–65.) Detective Kennedy read Boyd his *Miranda* rights.[2] (Tr. 257–58.) Boyd said he was willing to answer questions. (Tr. 258.) Detective Kennedy informed Boyd that he was under arrest because a witness to a robbery had followed the robber to a car that was traced to Boyd. (Tr. 258.) Boyd stated that he often lent his vehicle to a friend who closely resembled him. (Tr. 259, 266.) Boyd, however, refused to identify this friend, and the conversation ended. (*Id.*)

At the police precinct, at around 2:10 P.M., Detective Kennedy again read Boyd his *Miranda* rights. (Tr. 269–70.) Between 4:45 and 5:15 P.M., Detective Dzihansky read Boyd his third *Miranda* warning. (4/25/90 Hearing Tr. 48–50.) Boyd stated that he had nothing to say. (*Id.* at 51.)

At around 6:00 P.M., Police Officer Michael Bachety, without reading Boyd a *Miranda* warning, told Boyd that the police had a search warrant, that they intended to search Boyd's residence for the silver gun, and it would save his wife trouble if Boyd told them where the gun was. (Tr. 260.) Boyd replied that the gun was not in the apartment, and that he had returned it to a friend. (*Id.*)

At 6:15 P.M., as Boyd was being transported to central booking, Detective Fisher reminded Boyd that he was "still under *Miranda*," and asked why Boyd was robbing luggage stores. (4/25/90 Hearing Tr. 52.) Boyd replied that it was "a long involved story." (4/25/90 Hearing Tr. 52–53; Tr. 398.)

### Boyd's Trial Testimony

Boyd testified in his own defense at trial. (Tr. 339–99.) He testified that he was friends with Walter Moore, an employee at A to Z Luggage's Beaver Street store, and that he visited Moore at work. (Tr. 341–46.) Boyd became friends with employees at other A to Z stores. (Tr. 342–43.) Boyd testi-

fied that the A to Z employees came up with a scheme in which he would pick up money from them, they would report a robbery, and they would later split the money. (Tr. 349–53, 359, 361–65.) He testified: "So I was involved in a scheme, I do admit it." (Tr. 350.) Boyd said that while there were seven counts in the indictment, he did it "on at least twelve or thirteen different occasions." (Tr. 350.) Boyd's "cut" from the scheme was around $1,500. (Tr. 388.) But Boyd said he never had a gun. (Tr. 378.)

The A to Z employees denied at trial that they were involved in any scheme with Boyd. (Tr. 81–82, 137–38, 158–59, 173, 188–89, 224, 408–10.)

### Boyd's Indictment, Conviction and Subsequent Procedures

On September 7, 1989, Boyd was indicted for six counts of robbery in the first degree. (9/7/89 Calendar Call Tr. at 2.) On February 23, 1990, a second grand jury indicted Boyd with a seventh count of robbery in the first degree, arising out of the August 20, 1989 robbery of the 7th Avenue store. The indictments were consolidated on March 20, 1990. (3/20/90 Calendar Call Tr. at 2.)

On May 29, 1990, Boyd was convicted of seven counts of robbery in the first degree and sentenced, as a second felony offender, to seven consecutive terms of five to ten years imprisonment. *See People v. Boyd*, 202 A.D.2d 234, 608 N.Y.S.2d 224, 225 (1st Dep't 1994).

Boyd's post-trial procedural history is set forth in this Court's May 7, 1996 Report and Recommendation (at pages 2–4), familiarity with which is presumed.

### ANALYSIS

I. **THE TRIAL COURT'S DENIAL OF BOYD'S MOTION TO SUPPRESS STATEMENTS MADE AFTER HE INVOKED HIS RIGHT TO REMAIN SILENT IS HARMLESS ERROR**[3]

Boyd alleges that the trial court erred in denying his motion to suppress statements

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Because the Court recommends that Boyd's petition be dismissed on the merits, the Court need not address the effect, if any, of the Antiter-

made after he twice invoked his right to remain silent. (Petition ¶ 12(a), as amended by Objections at 1–2.) The Appellate Division, First Department found that while Boyd's "statement concerning the robbery weapon was taken in violation of his right to remain silent," "there was no reasonable possibility that the statement could have affected the verdict, in view of the overwhelming evidence of guilt, which included the inherent implausibility of defendant's testimony that the robberies were really employee frauds, and the impressive array of prosecution witnesses contradicting the defense in every respect." *People v. Boyd*, 202 A.D.2d 234, 608 N.Y.S.2d 224, 224–25 (1st Dep't 1994). I agree that admission of Boyd's statement about the gun was harmless error as a matter of federal law.

Where use of evidence is challenged, the Court must determine whether "'there is a *reasonable* possibility that the evidence complained of might have contributed to the conviction.'" *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (emphasis added, quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)); *Medina v. Keane*, 936 F.2d 681, 682–83 (2d Cir.) (admission of statement that violated defendant's *Miranda* rights held to be harmless error), *cert. denied*, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 216 (1991). Put another way, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. State of California*, 386 U.S. at 24, 87 S.Ct. at 828; *see also, e.g.*, *Milton v. Wainwright*, 407 U.S. 371, 372–73, 92 S.Ct. 2174, 2175–76, 33 L.Ed.2d 1 (1972) (admission of allegedly involuntary confession was harmless error beyond a reasonable doubt because of the overwhelming evidence of the defendant's guilt); *Schneble v. Florida*, 405 U.S. 427, 429–32, 92 S.Ct. 1056, 1059–60, 31 L.Ed.2d 340 (1972) (admission of statements made by co-defendant was harmless error beyond a reasonable doubt).

A constitutional error arising from use of evidence is harmless if a jury would have reached the same guilty verdict without hearing the additional, unconstitutionally obtained evidence. *E.g.*, *Milton v. Wainwright*, 407 U.S. at 377–78, 92 S.Ct. at 2178; *Medina v. Keane*, 936 F.2d at 683. Such judgment as to harm must be based on the Court's "own reading of the record and on what seems to [the Court] to have been the probable impact of the [inadmissible evidence] on the minds of an average jury." *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. at 432–33, 92 S.Ct. at 1059–60; *Medina v. Keane*, 936 F.2d at 684.

■ As the Appellate Division determined, Boyd was positively identified by seven witnesses as the person who committed the robberies. (Tr. 32–33, 57, 63, 87, 90, 114, 144, 168–69, 205–06, 209.) Boyd admitted that he took the money, but claimed it was part of an employee fraud scheme rather than armed robbery. (Tr. 349–53, 359, 361–65, 378.) Furthermore, Boyd's defense that the robberies were part of an employee fraud scheme is highly implausible, particularly since it was directly contradicted by the testimony of his alleged accomplices. (Tr. 81–82, 137–38, 158–59, 173, 188–89, 224, 408–10.) Boyd's statement that he gave the gun back to a friend thus contributed only minimally, if at all, to Boyd's conviction in light of the overwhelming evidence of his guilt. The trial court's admission of the statement was therefore harmless under the prevailing test for harmless constitutional error. Boyd is not entitled to habeas relief based on this claim.

## II. BOYD HAS FAILED TO PROVE THAT HIS COUNSEL WAS INEFFECTIVE

Boyd asserts a laundry list of bases for his ineffective assistance of counsel claim: (1) counsel failed to make a motion to dismiss the indictment on speedy trial grounds; (2) counsel failed to secure bail at arraignment;

---

rorism and Effective Death Penalty Act of 1996 (Pub.L. No. 104–132, 110 Stat. 1214), on noncapital case habeas corpus petitions, such as Boyd's, filed and pending before the Act's April 24, 1996 enactment. A Second Circuit panel has decided that the Antiterrorism Act "does not apply retroactively to habeas corpus petitions not involving death sentences filed prior to the statute's enactment." *Boria v. Keane*, 90 F.3d 36, 37–38 (2d Cir.1996).

(3) counsel failed to submit a N.Y. CPL § 190.50 motion to allow Boyd to appear before the grand jury;[4] (4) counsel never secured a decision from the N.Y. CPL § 210.30[5] motion filed to inspect the grand jury minutes; (5) counsel failed to insure that a private investigator conducted an investigation; (6) inappropriate defense at a *Wade* hearing; (7) the omnibus discovery motion was drafted for a narcotics offense with which Boyd was not charged; (8) counsel made no opening statement at trial; (9) counsel failed to make objections to the prosecutor's summation and to the admission of certain evidence; (10) counsel failed to make a record of *Rosario* materials given to him and failed to secure such materials; and (11) counsel failed to request that the jury be charged with an affirmative defense charge. (Petitioner's Reply to Respondent's Answer ["Reply Br."], dated Sept. 21, 1995, at 13–17.)[6]

### A. *Strickland v. Washington's* Two-Part Test *to Determine Ineffective Assistance Claims*

The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Id.* at 689, 104 S.Ct. at 2065.

Second, the defendant must show that he was prejudiced by counsel's performance. *Id.* at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated or trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with over-

---

**4.** NY CPL § 190.50 states, in part: "When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request...." NY CPL § 190.50(5)(a).

**5.** NY CPL § 210.30 states, in part: "If the court determines that there is not reasonable cause to believe that the evidence before the grand jury may have been legally insufficient, it may in its discretion either (a) deny both the motion to inspect and the motion to dismiss or reduce, or (b) grant the motion to inspect notwithstanding and proceed to examine the minutes and to determine the motion to dismiss or reduce.... In any case, the court must place on the record its ruling upon the motion to inspect." NY CPL § 210.30(4), (5).

**6.** *See also* Petition p. 7 (ground six) and p. 9 (ground nine). To the extent the Petition raises examples of alleged ineffective assistance beyond those in Boyd's Reply Brief, the Court has examined them and finds them to be without merit.

whelming record support. Taking the unaffected findings as a given, and taking due account of the effect of errors on the remaining findings, *a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.*

*Id.* at 695–96, 104 S.Ct. at 2069 (emphasis added).

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Id.* at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.

None of Boyd's allegations satisfy the above test for establishing ineffective counsel. In each instance (and even taking all the instances as a whole), Boyd fails to prove that counsel's actions fell below a "wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. at 2065, or that the result of the trial would have been different absent counsel's actions.

#### B. *Boyd's Counsel Was Not Ineffective*

##### 1. *Counsel's Failure to Make A Speedy Trial Motion*

Boyd alleges that counsel was ineffective for failing to move to dismiss on speedy trial

grounds,[7] where such motion allegedly would have been dispositive. (Boyd Reply Br. at 13–15.)

■ If a speedy trial motion likely would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective assistance. *Romero v. Keane,* 92 Civ. 2495, 1993 WL 228076 at *5 (S.D.N.Y.1993).

■ The record establishes that there was no speedy trial violation. Boyd was arraigned on September 6, 1989 and trial began on April 26, 1990. (9/7/89 Calendar Call Tr. at 1; Tr. 1.) If the defense had not filed any motions or requested adjournments, then the six month speedy trial window would have expired 51 days earlier, on March 6, 1990. However, on December 12, 1989, Boyd informed the court of his dissatisfaction with counsel and the Court agreed to appoint new counsel at a hearing on January 2, 1990 (12/12/89 Calendar Call Tr. at 2–5.) That results in the exclusion of 21 days pursuant to CPL § 30.30(4)(f). Moreover, the defense filed pre-trial motions and requested an adjournment. (*See* 1/2/90 Calendar Call Tr. at 4–5.) As of March 6, the Court still had Boyd's discovery motion and a motion to address the grand jury under advisement and this additional time is excludable under CPL § 30.30(4)(a). (*See* 3/6/90 Calendar Call Tr. 2–4.) (*See generally* Brief for Respondent to 1st Dep't, 1/93, at 67–71.) Thus, more than 51 days is excluded because of Boyd's action in seeking new counsel, requesting an adjournment and for the time Boyd's motion were under consideration by the Court.

Boyd's speedy trial motion would not have been successful and counsel was not ineffective for failing to make such a motion. This claim fails *Strickland's* second prong.

---

7. Under New York law, a motion to dismiss must be granted if the State is not ready for trial within six months of the commencement of a criminal action. N.Y. C.P.L. § 30.30(1)(a). A criminal action is commenced as soon as an accusatory instrument is filed in a criminal court. NY CPL § 1.20(17).

CPL § 30.30(4) tolls the limitation period when there is, *inter alia:* (1) "a reasonable period of delay resulting from other proceed-ings concerning the defendant, including but not limited to: ... pre-trial motions; ... and the period during which such matters are under consideration by the court" (§ 30.30(4)(a)); (2) a "period of delay resulting from a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel ..." (§ 30.30(4)(b)); or (3) a "period during which the defendant is without counsel through no fault of the court." (§ 30.30(4)(f).)

### 2. Counsel's Alleged Failure to Secure Bail At Arraignment

■ Boyd's claim that counsel was ineffective because counsel failed to secure bail at arraignment is clearly meritless. Boyd's bail originally was set at $35,000, in part because the government was investigating Boyd on other related and unrelated robbery charges. (*See* 11/22/89 Proceedings Tr. at 6–7.) Counsel moved to reduce bail and the court reduced it to $20,000. (*Id.* at 16.) After Boyd personally addressed the court, the court further reduced bail to $17,500. (*Id.* at 19–20.) Boyd made bail on December 8, 1989. (12/12/89 Calendar Call Tr. at 3–4.)

Boyd presents no evidence that would allow the Court to conclude that counsel was ineffective in this regard. Moreover, Boyd presents absolutely no evidence or even argument that had a lower bail been imposed earlier, Boyd would have assisted counsel in developing evidence to present at trial or that in any way the bail situation would have resulted in a different outcome at trial. Thus, "to the extent that" Boyd "challenges his counsel's failure to obtain bail on his behalf, this claim became moot upon his conviction and sentence." *Hernandez v. Senkowski*, 93 Civ. 5763, 1995 WL 604703 at *3 (E.D.N.Y.1995).

### 3. Counsel's Alleged Failure to Submit A Motion for Boyd To Testify Before the Grand Jury

■ Boyd alleges that counsel was ineffective in failing to submit a CPL § 190.50 motion so that Boyd could testify before the grand jury. The Court notes, however, that Boyd filed a pro se motion to testify before the grand jury, and the court denied it. (*See* 2/6/90 Calendar Call Tr. at 11–12; 4/3/90 Calendar Call Tr. at 2–3.)

■ "[C]ounsel's failure to secure [a defendant's] right to testify before the grand jury does not, by itself, establish ineffective assistance of counsel." *Kohler v. Kelly*, 890 F.Supp. 207, 213 (W.D.N.Y.1994), *aff'd mem.*, 58 F.3d 58 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995). Furthermore, Boyd fails to allege or show prejudice, *i.e.*, he presents no argument that

if he had appeared before the grand jury, the grand jury's action would have been any different. *See, e.g., Saldana v. State of New York*, 850 F.2d 117, 119 (2d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 968 (1989). Given the overwhelming evidence of Boyd's guilt, including his admission to participating in a scheme to defraud, and the low burden of proof for obtaining an indictment, it is unlikely that the grand jury would have voted not to indict Boyd if he had appeared before them. *See, e.g., Kohler v. Kelly*, 890 F.Supp. at 214.

Boyd thus failed to show prejudice under *Strickland's* second prong, and therefore has not proven ineffective assistance of counsel.

### 4. Counsel Allegedly Never Secured A Decision on the Motion to Inspect Grand Jury Minutes

Boyd claims that counsel's failure to secure a decision from a CPL § 210.30 motion to inspect grand jury minutes amounted to ineffective assistance. Again, Boyd fails to satisfy *Strickland*'s second prong by showing that the results of the trial would have been different if such a decision had been secured. As discussed below in Section III of this Report and Recommendation, the trial judge stated that he had examined the grand jury minutes and found them to be legally sufficient. (2/6/90 Calendar Call Tr. at 2.)

### 5. Counsel's Alleged Failure to Insure That the Private Investigator Conducted a Proper Investigation

■ Boyd alleges that counsel's failure to insure that the private investigator conducted an appropriate investigation establishes a claim of ineffective counsel. In *Strickland*, the Court specifically addresses the issue of investigations: "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Boyd does not set forth what the investigator failed to investigate and in what way this amounted to less than reasonable assistance of counsel. "Because this claim is merely a conclusory allegation, [Boyd] has failed to

establish that his counsel's performance was deficient. [Boyd's] bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably." *Matura v. United States,* 875 F.Supp. 235, 237 (S.D.N.Y.1995). Furthermore, due to the overwhelming evidence of Boyd's guilt, it is unlikely that additional investigations would have affected the outcome of the trial. *See Stubbs v. Thomas,* 590 F.Supp. 94, 101 (S.D.N.Y.1984) (although court-appointed investigator's performance was substandard, due to overwhelming evidence of guilt there was no "reasonable probability that absent the investigative errors, the fact finder would have had a reasonable doubt respecting guilt."). *See also, e.g., Jones v. Hollins,* 884 F.Supp. 758, 766 (W.D.N.Y.) (ineffective assistance of counsel not proven where petitioner fails to show that result of trial would have been different if counsel had further investigated defendant's claim of self-defense), *aff'd mem.,* No. 95–2279, 1995 WL 722215 (2d Cir. Nov. 30, 1995).

### 6. *Counsel's Alleged Inappropriate Defense at the Wade Hearing*

■ Boyd's claim that counsel provided an inappropriate defense at the *Wade* hearing is meritless. The record shows that counsel vigorously promoted Boyd's defense and cross-examined Detectives McCabe, Kennedy and Zihansky regarding the arrest, *Miranda* warnings, line-up procedures, photo array and Boyd's identification by the robbery witnesses. (*See* 4/25/90 Hearing Tr. at 12–17, 25–33; 4/26/90 Hearing Tr. at 54–74.) Boyd's present argument is that the *Wade* identification hearing itself made no sense since Boyd's trial defense was that he knew all the witnesses and they knew him. (*See* Boyd Reply Br. at 15.) Boyd does not explain, therefore, how counsel's conduct at the *Wade* hearing possibly prejudiced Boyd's trial defense. Boyd's claim fails on both the first and second *Strickland* prongs.

### 7. *Counsel's Omnibus Discovery Motion Was Drafted for a Narcotics Offense Not Robberies*

■ Boyd alleges that counsel was ineffective because he submitted an omnibus discovery motion which was written for a narcotics offense. Although the omnibus motion does refer to narcotics, it also contains appropriate inquiries pertaining to Boyd's robbery charges. For example, it includes inquiries as to statements made by Boyd, identification procedures and prosecution witnesses. (Omnibus Motion, dated 2/23/90, at 1–6.) Boyd has not contended that the omnibus motion omitted any issues that should have been raised pertaining to his case. While counsel was sloppy, Boyd has failed to prove that counsel's performance fell below prevailing professional norms or, more important, prejudiced Boyd's case in any way. Boyd's claim of ineffective counsel is meritless.

### 8. *and*

### 9. *Counsel's Failure to Make An Opening Statement at Trial or Make Certain Objections*

Boyd asserts that counsel was ineffective for failing to make an opening statement at trial and failing to object to certain of the prosecutor's remarks on summation or object to certain photographs.

■ Counsel's decision not to make an opening statement and alleged failure to make objections may be attributed to counsel's trial tactics. *See, e.g., United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.) ("[T]he decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel.... By waiving opening argument the defense did not commit itself to a particular position and was thus free to develop any defense that might materialize as the prosecution presented its case."), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *United States v. Salovitz,* 701 F.2d 17, 20–21 (2d Cir.1983) (citing cases); *Arce v. Smith,* 710 F.Supp. 920, 926–27 (S.D.N.Y.1989) (" [I]nasmuch as the summation comments did not rise to the level of constitutional error or reversible error under state law, petitioner was not prejudiced by counsel's failure to object to them and counsel cannot

be found to have been ineffective."), *cert. denied,* 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990); *see also Cuevas v. Henderson,* 801 F.2d 586, 592 (2d Cir.1986) (where prosecution's summation was appropriate, counsel's failure to object did not constitute ineffective assistance of counsel), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987).

Boyd fails to prove that counsel's decisions were deficient and unreasonable or that they prejudiced the outcome of the case. At trial, Judge Weissberg specifically instructed the jury as follows with respect to the defense's opening statement:

> Ladies and Gentlemen, [defense counsel] has elected not to address you at this time. You are directed in the strongest possible terms not to draw any adverse influence from that.

> As I explained to you during the process of jury selection, it is the People's burden to prove the case beyond a reasonable doubt, and the Defense does not have to prove or disprove anything.

(Tr. 28–29.) Counsel's decision not to make an opening statement or to object to the prosecutor's summation was reasonable and in no way prejudicial. Boyd has failed to prove that counsel's actions in this regard were deficient, and not simply a matter of reasonable trial tactics.

### 10. *Counsel's Failure to Make A Record of Rosario Material and Failure to Secure Such Material*

■ Boyd alleges that counsel was ineffective in failing to make a record of the *Rosario* material he obtained and for failing to secure all *Rosario* material. Boyd does not set forth how the *Rosario* material that counsel allegedly failed to secure would have affected the outcome of the case. Thus, Boyd does not satisfy the second *Strickland* prong. *See, e.g., Colson v. Mitchell,* 798 F.Supp. 966, 972–73 (E.D.N.Y.1992) ("Although it is true that receipt of such [*Rosario* ] material puts defense counsel in a better position for cross-examination purposes, a violation of the [*Rosario* ] rule does not constitute per se ineffective assistance of counsel.").

### 11. *Counsel's Failure to Request An Affirmative Defense Charge*

■ Boyd alleges that trial counsel was ineffective because he failed to request an affirmative defense charge. Boyd, however, does not set forth what this affirmative defense was. Thus, the court cannot say that it would have succeeded if raised, and Boyd has not satisfied the second *Strickland* prong. *See, e.g., Roman v. United States,* 741 F.Supp. 43, 44 (E.D.N.Y.1990) (counsel is not required to raise all possible defenses, and counsel's failure to raise affirmative defense that was not likely to succeed is not ineffective assistance).

### III. *BOYD'S CLAIM THAT THE COURT FAILED TO INSPECT THE GRAND JURY MINUTES FAILS ON THE MERITS*

Boyd claims that the trial court violated the due process and equal protection clauses of the Constitution because: (a) the prosecution failed to turn over the grand jury minutes for the Court to inspect; and (b) the Court did not adhere to mandated statutes governing the inspection of grand jury minutes. Even assuming that this states a cognizable habeas claim, *see Hurtado v. California,* 110 U.S. 516, 538, 4 S.Ct. 111, 121, 28 L.Ed. 232 (1884) (there is no federal constitutional right to a grand jury for state as opposed to federal prosecutors), it fails on the merits. At the February 6, 1990 Calendar Call, Judge Weissberg specifically stated that "[t]he record should reflect that I have examined the Grand Jury minutes with respect to indictment number . . . 10080 of '89." I find them to be legally sufficient. (2/6/90 Calendar Call Tr. at 2.) Furthermore, in his decision dated April 25, 1994, Judge Weissberg reiterated that "[Boyd's] claim is incorrect. The grand jury minutes were inspected by me before the commencement of the trial and found to be legally sufficient." (Decision of J. Weissberg, dated 4/25/94, at 1–2.) The record thus directly contradicts Boyd's allegations and his claim is without merit.

### CONCLUSION

For the reasons set forth above, I recommend that this Court deny Boyd's habeas corpus petition.

454

*FILING OF OBJECTIONS TO THIS RE-*
*PORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Batts. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

July 24, 1996.