**Juan TAPIA–GARCIA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 98 CIV.3465(HB)(AJP).**

United States District Court, S.D. New York.

May 24, 1999.

Juan Tapia–Garcia, Leavenworth, KS, pro se.

Meir Feder, Asst. U.S. Attorney, New York City, for Respondent.

### *MEMORANDUM AND ORDER*

BAER, District Judge.[1]

Juan Tapia–Garcia (the "petitioner") moves pursuant to 28 U.S.C. Section 2255, to set aside his guilty plea to the crime of re-entry after deportation following an aggravated felony in violation of 8 U.S.C. Section 1326(b)(2). I referred this matter to Magistrate Judge Peck, who issued a Report and Recommendation (the "Report") on November 3, 1998 and recommended that the petitioner's motion to vacate his conviction be denied. The petitioner filed timely objections. For the reasons stated below, I agree with Judge Peck.

## I. *BACKGROUND*

The procedural history of this case is recited in the Report and Recommendation. To summarize, in August 1995, the petitioner agreed to plead guilty pursuant to a plea agreement between the U.S. Attorney and the defendant in the Southern District of New York to a two-count information charging him "(i) with illegal re-entry into the United States after having been deported after conviction for an aggravated felony, in violation of 8 U.S.C. Section 1326(a); and (ii) with escape from custody, in violation of 18 U.S.C. Section 751(a)." Report at 3 (quoting *United States v. Tapia–Garcia*, No. 96–1773, 141 F.3d 1152, 1998 WL 88035, at *1 (2d Cir. Feb.25, 1998)). The petitioner pled guilty in accordance with that agreement on January 4, 1996. On November 21, 1996, the petitioner was sentenced by this Court to 105 months of incarceration, followed by three years of supervised release, and a $100 special assessment. *See id.* Tapia–Garcia was represented by attorney Ste-

1. Sean Serpe, a second-year student at Fordham Law School, assisted in the research and preparation of this decision.

ven Goldenberg at both his guilty plea allocution and sentencing.

On appeal to the Second Circuit, the petitioner was represented by new counsel, and the issues raised dealt with sentencing guideline calculations. *See id.* The Second Circuit in February of 1998 affirmed the petitioner's sentence. *See id.* at 4.

In March 1998, the petitioner filed his present *pro se* section 2255 petition. *See id.*

## II. *DISCUSSION*

### A. *Standard of Review*

■ A district court reviews de novo the determination of those parts of a Magistrate Judge's Report and Recommendation to which any party objects. It may accept, reject, or modify, in whole or in part, the Report and Recommendation. See 28 U.S.C. Section 636(b)(1)(B) & (C) (1988). However, the court need not conduct a de novo hearing. *See Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989) (citing *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). The court may adopt without review those parts to which the petitioner does not object and with which the court finds no clear error. *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991).

### B. *Petitioner's Objections*

The petitioner objects to the Report and Recommendation on two grounds: (1) that his appellate counsel was ineffective for failing to raise the issue that the information should have been vacated on the ground that attempted murder was not an "aggravated felony" at the time of his attempted murder conviction; and (2) that

he is entitled to be deported before he completes his prison term, or alternatively, that he is entitled to a downward departure from his current sentence because he will be deported thereafter.

■ First, as to the petitioner's deportation and downward departure argument, "[i]t is well-established...that the failure to raise a claim on direct appeal is itself a default of normal appellate procedure which a defendant can overcome only by showing cause and prejudice." *Andre Rodriguez v. United States,* 878 F.Supp. 20, 23 (S.D.N.Y.1995) (internal quotations and citations omitted). Cause must be something external to the petitioner, something that cannot be fairly attributed to him. *See Salvador Rodriguez v. United States,* 866 F.Supp. 783, 785 (S.D.N.Y. 1994). In the main, the petitioner asserts that his failure to raise his deportation and downward departure claim arose from his failure to understand the legal system, or the "complex web of procedural rules," (Petitioner's Motion Objecting to Magistrate's Report and Recommendation at 10). This is so despite the fact that he was represented by counsel both during trial and on appeal. Regardless, ignorance of the law is not sufficient to sustain the petitioner's burden in a habeas case. *See Salvador Rodriguez,* 866 F.Supp. at 785. Therefore, the petitioner's deportation and downward departure objection is procedurally barred.

Next, the petitioner objects to the Report and Recommendation based on a new claim of ineffective assistance of appellate counsel and utilizes the same reasoning from his claim of ineffective assistance of trial counsel which is now procedurally barred.[2] Tapia–Garcia again argues that

---

[2] To the extent that Tapia–Garcia challenges the effectiveness of his counsel at trial, his claim is procedurally barred. Since the petitioner did not raise this claim on direct appeal, he is required to show both cause for not earlier raising this issue and prejudice resulting from it. *See Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Bloomer v. United States,* 162 F.3d 187, 191–192 (2d Cir.1998). "Thus, where the defendant is represented by new appellate counsel on direct appeal, and the ineffective assistance claim is based solely on the record developed at trial, the defendant is required to raise his claim on direct appeal." *Id.* at 192. Here, there is no showing of "cause," and thus, his claims are procedurally barred.

he was denied effective representation because his appellate attorney failed to raise the argument that attempted murder was not an "aggravated felony" under 8 U.S.C. § 1326(b)(2) at the time of his conviction. To establish a claim for ineffective assistance of counsel, the petitioner must show (i) that his attorney's performance "fell below an objective standard of reasonableness," and (ii) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *see also, Bethea v. Artuz,* 126 F.3d 124, 126 (2d Cir.1997). "The same standard applies to a review of the effectiveness of appellate counsel." *McKee v. United States,* 167 F.3d 103, 106 (2d Cir. 1999). Furthermore, the Supreme Court has held that in deciding an ineffective assistance claim the court need not address both elements of the inquiry, in other words, if the petitioner is unable to demonstrate one component, the court need not explore the other. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

■ "In evaluating the prejudice component of *Strickland,* a court must determine whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *McKee,* 167 F.3d at 106. Here, Tapia–Garcia has failed to demonstrate any prejudice in connection with his claim for ineffective assistance of appellate counsel. After a review of the relevant statutes and the chronology of events in this case, I agree with the thorough analysis articulated in Magistrate Judge Peck's Report and Recommendation which concludes the "aggravated felony" provision of 8 U.S.C. § 1326(b) applies to Tapia–Garcia's attempted murder conviction. *See* Report at 11–22. Although Magistrate Judge Peck tracked the history of the statute vis a vis the petitioner's ineffective assistance of trial counsel, the analysis is the same.

Tapia–Garcia was convicted of attempted murder in 1985, deported in March 1993 and then illegally re-entered the United States two months later in May 1993. Since the petitioner's conviction predated the enactment of the statute authorizing an enhanced sentence for reentry after deportation and conviction of an aggravated felony, the Court must make two inquiries in order to determine whether Tapia–Garcia's attempted murder conviction falls under the statute: (1) whether attempted murder is an "aggravated felony" under 8 U.S.C. § 1101(a)(43), and (2) whether 8 U.S.C. § 1326(b)(2) applies to defendants with pre–1988 aggravated felonies. I conclude that both questions must be answered in the affirmative.

As to the first inquiry, under 8 U.S.C. § 1101(a)(43), from the enactment of the sentencing enhancement provision in 1988 through its current amendments, the definition of "aggravated felony" applied to 8 U.S.C. § 1326(b) has included murder and attempted murder. Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7342, 102 Stat. 4181, 4469–70 (1988); *see also, United States v. Westcott,* 159 F.3d 107, 111 (2d Cir.1998) ("§ 1101(a)(43)'s definition of 'aggravated felony' was limited to murder, certain drug and firearm trafficking crimes, and attempts and conspiracies to commit these crimes" prior to the passage of the Immigration Act of 1990). Thus, there is no doubt that Tapia–Garcia's attempted murder conviction is an "aggravated felony."

Next, although the Second Circuit has not explicitly decided this issue, all the Courts of Appeals to consider the statute have concluded that 8 U.S.C. § 1326(b)(2) applies to defendants with pre–1988 aggravated felonies, and authorizes an enhanced sentence for reentry after deportation. *See, e.g., United States v. Lozano,* 138 F.3d 915, 916–17 (11th Cir.1998); *United States v. Baca–Valenzuela,* 118 F.3d 1223, 1228–29 (8th Cir.1997); *United States v. Campbell,* 94 F.3d 125, 126–28 (4th Cir.1996), *cert. denied,* 520 U.S. 1242, 117 S.Ct. 1847,

137 L.Ed.2d 1050 (1997); *Scheidemann v. INS,* 83 F.3d 1517, 1523–25 (3d Cir.1996); *United States v. Cabrera–Sosa,* 81 F.3d 998, 1000–01 (10th Cir.), *cert. denied,* 519 U.S. 885, 117 S.Ct. 218, 136 L.Ed.2d 151 (1996); *United States v. Saenz–Forero,* 27 F.3d 1016, 1020–21 (5th Cir.1994); *United States v. Troncoso,* 23 F.3d 612, 613–14 (1st Cir.1994), *cert. denied,* 513 U.S. 1116, 115 S.Ct. 912, 130 L.Ed.2d 793 (1995); *United States v. Arzate–Nunez,* 18 F.3d 730, 734–35 (9th Cir.1994).

Therefore, I conclude that Tapia–Garcia cannot show the degree of prejudice necessary to satisfy this prong of the *Strickland* standard. Put another way, his appellate counsel would not have succeeded had he chosen to challenge whether the petitioner's attempted murder conviction qualified as an "aggravated felony." In short, there is no reasonable probability that the result of the appeal would have been different absent the appellate counsel's alleged deficient performance.

### III. *CONCLUSION*

After conducting a de novo review of those parts of the Report and Recommendation to which the petitioner objected and finding no clear error with respect to the balance of the Report and Recommendation, I adopt Magistrate Judge Peck's Report and Recommendation in all respects. The motion is denied and the Clerk of the Court is directed to close the case.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Petitioner Juan Tapia–Garcia petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, to set aside his guilty plea to the crime of re-entry after deportation following an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). First, Tapia–Garcia claims that his trial counsel was

ineffective for failing to move to vacate the information on the ground that attempted murder was not an "aggravated felony" at the time of his attempted murder conviction. Second, Tapia–Garcia petitions for resentencing on the ground that he is entitled to be deported before he completes his prison term, or alternatively, that he is entitled to a downward departure from his current sentence because he will be deported after he serves his sentence. For the reasons set forth below, Tapia–Garcia is procedurally barred from raising these issues in his habeas petition because they could have been raised on direct appeal (for which he had new counsel), and Tapia–Garcia has not demonstrated cause for his failure to raise these claims on direct appeal. Even if the claims were not procedurally barred, however, they lack merit. Tapia–Garcia's ineffective assistance claim does not meet the *Strickland v. Washington* standard, and his sentencing claims are frivolous. The Court should deny Tapia–Garcia's habeas petition.

### *FACTS*

At sentencing, Judge Baer referred to Tapia–Garcia as a "one-man crime wave until he was caught." (11/21/96 Sentencing Tr. at A49.) [1] The facts of that one-man crime wave are not disputed on this Petition, and for the most part are summarized in the Second Circuit's unpublished opinion affirming Tapia–Garcia's conviction on direct appeal:

Tapia–Garcia, a citizen of the Dominican Republic, was convicted of attempted murder in the Supreme Court of the State of New York, Bronx County, on October 16, 1985. On January 6, 1993, after serving eight years of a longer sentence, he was transferred to the custody of the Immigration and Naturalization Service for deportation. He was deported in March 1993, after he had been served with a notice of penalties

---

**1.** References to "A" are to the record in the Appendix on Tapia–Garcia's direct appeal to the Second Circuit, attached as Exhibit 1 to

the Affidavit of A.U.S.A. Meir Feder opposing Tapia–Garcia's habeas Petition.

for illegal re-entry into the United States.

Less than two months later, in May 1993, he was arrested at the Miami International Airport as he attempted to re-enter the United States without authorization. He was detained by the INS until June 3, when he escaped after assaulting a detention officer. He was subsequently arrested and was detained in a Florida jail until he again escaped, after assaulting two more guards. After a complicated, dramatic, and violent set of events, Tapia–Garcia was finally subdued and arrested in New York in March 1995 pursuant to an arrest warrant issued by New Jersey state police.

In August 1995, Tapia–Garcia signed a plea agreement with the United States Attorney's office for the District of New Jersey. He agreed to plead guilty in the Southern District of New York to a two-count information charging him (i) with illegal re-entry into the United States after having been deported after conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a); and (ii) with escape from custody, in violation of 18 U.S.C. § 751(a). On January 4, 1996, his case was transferred to the Southern District and he pled guilty in accordance with the agreement.

*United States v. Tapia–Garcia*, 141 F.3d 1152 (table), 1998 WL 88035 at *1 (2d Cir. Feb.25, 1998). (*See also, e.g.*, A11–14, A17, A35–39, A62–63, A66–67.)

On November 21, 1996, in light of Tapia–Garcia's criminal history as a "one-man crime wave until he was caught" (A49), Judge Baer sentenced Tapia–Garcia to "105 months of incarceration, followed by three years of supervised release. And $100 special assessment." (11/21/96 Sentencing Tr. at A59; *see also* A85–91.)

Tapia–Garcia was represented by attorney Steven Goldenberg at both his guilty plea allocution and sentencing. (*See* A20–21, A42–43.) On his direct appeal, Tapia–Garcia was represented by new counsel, Colleen P. Cassidy of the Legal Aid Society's Federal Defender Division. (*See, e.g.*, A92.) *See also United States v. Tapia–Garcia*, 1998 WL 88035 (counsel appearances).

Tapia–Garcia's direct appeal dealt with sentencing guideline calculations (alleged double-counting of offense levels and inclusion of old and minor offenses). *See United States v. Tapia–Garcia*, 1998 WL 88035 at *2–3. The Second Circuit affirmed Tapia–Garcia's sentence. *Id.* at *3.

In March 1998, less than a month after the Second Circuit's decision on his direct appeal, Tapia–Garcia filed his present pro se § 2255 habeas petition. His Petition raises two issues: first, alleged ineffective assistance of trial counsel for failing to move to vacate the information on the ground that Tapia–Garcia's attempted murder conviction was not then an "aggravated felony." (Pet. at 7–11.) Second, Tapia–Garcia alleges that he is entitled to immediate deportation or, alternatively, a reduction in his sentence because he faces later deportation. (Pet. at 12–15.)

## ANALYSIS

### I. BECAUSE TAPIA–GARCIA COULD HAVE RAISED HIS HABEAS CLAIMS ON DIRECT APPEAL, FOR WHICH HE HAD NEW COUNSEL, AND HE HAS NOT SHOWN CAUSE AND PREJUDICE, HIS CLAIMS ARE PROCEDURALLY BARRED

It is well-established law that a § 2255 claim cannot be used as a substitute for a direct appeal, and that a claim that could have been raised on direct appeal is cognizable under § 2255 only under the "cause and prejudice" standard. As the Second Circuit has held:

A § 2255 petition may not be used as a substitute for direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982).... In order to raise a claim that could have been raised on direct appeal,

a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error. *Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992). The Supreme Court has stated that " 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson,* 501 U.S. 722, 751–53, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991).

*Marone v. United States,* 10 F.3d 65, 67 (2d Cir.1993); *see also, e.g., United States v. Frady,* 456 U.S. 152, 165, 167, 102 S.Ct. 1584, 1593, 1594, 71 L.Ed.2d 816 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.... We believe the proper standard for review of [petitioner's § 2255] motion is the 'cause and actual prejudice' standard....") (citing cases); *United States v. Munoz,* 143 F.3d 632, 637 (2d Cir.1998); *United States v. Canady,* 126 F.3d 352, 359 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1092, 140 L.Ed.2d 148 (1998); *United States v. Pipitone,* 67 F.3d 34, 38 (2d Cir.1995); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir. 1993).

Tapia–Garcia, however, argues that the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 438–39, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), should apply instead of the "cause and prejudice" standard. (Tapia–Garcia Reply Br. at 4–5.) He is mistaken. The case law is crystal-clear—and indeed, was reiterated by the Supreme Court last term—that the cause and prejudice standard applies in § 2254 and § 2255 proceedings to claims that a prisoner could have brought on direct appeal but did not. *E.g., Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is

'actually innocent.' ") (citations omitted); *Reed v. Farley,* 512 U.S. 339, 355, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) ("collateral review of procedurally defaulted claims is subject to the same 'cause and actual prejudice' standard, whether the claim is brought by a state prisoner under § 2254 or a federal prisoner under § 2255"); *United States v. Frady,* 456 U.S. at 167, 102 S.Ct. at 1594 ("We believe the proper standard for review of [petitioner's § 2255] motion is the 'cause and actual prejudice' standard...."); *United States v. Munoz,* 143 F.3d at 637; *United States v. Canady,* 126 F.3d at 359 ("Ordinarily, the failure of a federal defendant to raise an issue on direct appeal will bar the defendant from raising the issue for the first time in a habeas petition unless the defendant can show 'cause and actual prejudice.' "); *Triestman v. United States,* 124 F.3d 361, 369 n. 8 (2d Cir.1997) (quoting *Billy–Eko v. United States,* cited below); *United States v. Pipitone,* 67 F.3d at 38; *United States v. Tarascio,* 15 F.3d 224, 225 (2d Cir.1993); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993) ("the failure to raise a particular ground on direct appeal will bar consideration of that claim in a § 2255 motion unless the movant can show that there was cause for failing to raise the issue, and prejudice resulting therefrom."); *Marone v. United States,* 10 F.3d at 67 ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."); *Billy–Eko v. United States,* 8 F.3d 111, 113–14 (2d Cir.1993) ("It is well-settled that where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom."); *Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992) ("We now hold that failure to raise a claim"—even a constitutional claim—"on direct appeal is itself a default of normal appellate procedure, which a [§ 2255] de-

fendant can overcome only by showing cause and prejudice."); *Acevedo v. United States,* 95 Civ. 9984 & 93 CR 1012, 1996 WL 223937 at *2 (S.D.N.Y. May 2, 1996).

Tapia–Garcia's present sentencing-related § 2255 claims could have been raised on direct appeal, but were not. Indeed, Tapia–Garcia's direct appeal raised other sentencing issues. *See United States v. Tapia–Garcia,* 1998 WL 88035 at *2–3. Because his sentencing-related § 2255 claims were not raised on direct appeal, they are barred unless Tapia–Garcia satisfies the cause and prejudice standard. *See, e.g., United States v. Blackman,* 152 F.3d 920, 1998 WL 401275 at *2 (2d Cir. June 10, 1998) (unpublished opinion) ("Because [petitioner] failed to raise the improper sentence enhancement claim on direct appeal, he was not entitled to raise it in his § 2255 motion absent a showing of cause and prejudice."); *United States v. Pipitone,* 67 F.3d at 38–39; *Polanco v. United States,* 98 Civ. 592, 1998 WL 512957 at *3 (S.D.N.Y. Aug.17, 1998) (Sotomayor, D.J.); *United States v. McCoy,* 90 Cr. 573, 1997 WL 297043 at *3 (S.D.N.Y. June 3, 1997); *Wu v. United States,* 96 Civ. 3656, 1997 WL 68556 at *2 (S.D.N.Y. Feb.18, 1997); *Roccisano v. United States,* 936 F.Supp. 96, 102 (S.D.N.Y.1996), *aff'd mem.,* 152 F.3d 920 (2d Cir.1998); *Acevedo v. United States,* 1996 WL 223937 at *2 (§ 2255 challenge to fine imposed on defendant is procedurally barred because not raised on direct appeal). Tapia–Garcia's only attempt to show "cause" is that he "ought not to be expected to understand the complex web of procedural rules that now regulate the time and place in which a party may raise a meritorious claim." (Tapia–Garcia Reply Br. at 5.) Tapia–Garcia's "ignorance of the law" argument, however, has been squarely rejected by the courts as "cause." *See, e.g., Coronado v. Walker,* 95 Civ. 2495, 1997 WL 600461 at *1–2 (S.D.N.Y. Sept.26, 1997) (habeas corpus petitioner's pro se status, and his ignorance of the law at the time, did not constitute cause for his failure to raise his claim earlier); *Neff v.*

*United States,* 971 F.Supp. 771, 774 (E.D.N.Y.1997) ("An appellant's ignorance of the law does not satisfy the cause and prejudice requirements necessary to excuse appellant's failure to seek relief on direct appeal."); *Parker v. Mitchell,* 94 Civ. 1861, 1996 WL 502346 at *2 (S.D.N.Y. Sept.5, 1996) (habeas corpus petitioner's "ignorance of the law" and "averred good faith" are insufficient to excuse his failure to present his claims earlier); *United States v. Weiss,* 902 F.Supp. 326, 327 (N.D.N.Y.1995) (petitioner's ignorance of the legal consequences of his plea agreement did not constitute cause entitling him to bypass direct appeal); *Malik v. Brennan,* 93 Civ. 7861, 1995 WL 510047 at *5 (S.D.N.Y.1995) ("Petitioner's pro se status does not excuse his failure to establish cause …"). Thus, Tapia–Garcia's second § 2255 ground concerning deportation/sentencing is procedurally barred.

■ Tapia–Garcia's ineffective assistance of trial counsel claim requires additional discussion because of the special rules established for such claims. The Second Circuit has recognized that the "failure to raise ineffective assistance of counsel claims on direct appeal, however, should not necessarily be treated similarly to a failure to raise other constitutional claims." *Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993). The Second Circuit noted that an ineffective assistance claim "often requires consideration of matters outside the record on direct appeal," and secondly, where trial counsel also represents the defendant on direct appeal, "it would be unrealistic to expect that trial counsel would be eager to pursue an ineffective assistance claim," even if counsel recognized his or her own errors. *Id.,* at 114. The Second Circuit therefore allows ineffective assistance claims to be brought initially on a § 2255 collateral attack, subject to a "limitation" applicable here. The Second Circuit explained that that limitation applies where defendant has new counsel on direct appeal and the record is fully developed:

We agree that defendants should raise their claims of ineffective assistance at the earliest feasible opportunity. If the defendant has new appellate counsel on direct appeal, and the record is fully developed on the ineffective assistance issue, there is little reason to extend the defendant an unlimited opportunity to delay bringing the claim. Thus, in this narrow category of cases, but only in these cases, the petitioner must still show cause for not bringing the ineffective assistance claim on direct appeal, and prejudice resulting therefrom.

*Billy–Eko v. United States,* 8 F.3d at 115; *accord, e.g., Riascos–Prado v. United States,* 66 F.3d 30, 35 (2d Cir.1995); *Douglas v. United States,* 13 F.3d 43, 47 (2d Cir.1993); *Lamberti v. United States,* 22 F.Supp.2d 60, 75 (S.D.N.Y. 1998); *Evans v. United States,* 962 F.Supp. 25, 27 (E.D.N.Y.1997); *Acevedo v. United States,* 1996 WL 223937 at *6 n. 3; *Keats v. United States,* 856 F.Supp. 162, 165 (S.D.N.Y.1994), *aff'd mem.,* 50 F.3d 3 (2d Cir.1995).

Tapia–Garcia's ineffective assistance of trial counsel claim falls within the "narrow category" that the *Billy–Eko* rule requires to be raised on direct appeal. First, Tapia–Garcia had new counsel on his direct appeal.[2] Second, a challenge to the information because attempted murder allegedly was not an "aggravated felony" within the meaning of the statute is a matter of statutory interpretation, and thus an issue of law. The record on that, and thus on trial counsel's alleged ineffectiveness for failing to raise the issue, was fully developed at the time of Tapia–Garcia's direct appeal; no factual issues outside the record would have needed to be developed. Thus, under *Billy–Eko,* Tapia–Garcia's ineffective assistance of counsel claim is procedurally barred unless he can show cause and prejudice. As noted above, Tapia–Garcia's papers are devoid of any legally cognizable assertion of "cause." His claims, therefore, are procedurally barred.

## II.   EVEN IF THE COURT WERE TO REACH THE MERITS, TAPIA–GARCIA'S INEFFECTIVE ASSISTANCE CLAIM LACKS MERIT

### A.   The Strickland v. Washington Standard

The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The *Strickland* standard also applies to a habeas petitioner who claims that his guilty plea was involuntary due to ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *see also, e.g., United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996); *Tate v. Wood,* 963 F.2d 20, 26 (2d Cir.1992); *Polanco v. United States,* 98 Civ. 592, 1998 WL 512957 at *4 (S.D.N.Y. Aug.17, 1998) (Sotomayor, D.J.); *Ordonez v. United States,* 97 Civ. 3787, 1998 WL 292317 at *2 (S.D.N.Y. June 3, 1998); *Sims v. Superintendent, Clinton Correctional Facility,* 887 F.Supp. 571, 574 (S.D.N.Y.1995), *aff'd mem.,* 104 F.3d 349 (2d Cir.1996).

"First, the defendant must show that counsel's performance was deficient. This

---

**2.** While Tapia–Garcia's new appellate counsel wrote two letters to Judge Baer in March–April 1997 at the tail-end of the district court proceedings (*see* A78–84), this minimal involvement was entirely unrelated to the issues on which Tapia–Garcia claims his prior counsel was ineffective. This minor involvement at the district court level by appellate counsel does not take the case out of the *Billy–Eko* rule for cases involving new appellate counsel. *See, e.g., Lamberti v. United States,* 1998 WL 574385 at *10 (A petitioner whose appellate counsel had represented him from arraignment until one month prior to trial could not raise claim on § 2255 motions that was not raised on appeal where his appellate counsel had not represented him during the actual trial, when the alleged errors occurred). Similarly, in the instant case, appellate counsel did not represent Tapia–Garcia when a motion to quash the information would have been made.

requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065; *accord, e.g., Yanez v. Keane,* 95 Civ. 2259, 1998 WL 481062 at *8 (S.D.N.Y. Aug.6, 1998) (Haight, D.J. & Peck, M.J.); *Nieves v. Kelly,* 990 F.Supp. 255, 262 (S.D.N.Y.1997) (Cote, D.J. & Peck, M.J.); *Rodriguez v. Hanslmaier,* 96 Civ. 0867, 982 F.Supp. 279, 1997 WL 687954 at *6 (S.D.N.Y. Oct.30, 1997) (Sprizzo, D.J. & Peck, M.J.); *Boyd v. Hawk,* 94 Civ. 7121, 965 F.Supp. 443, 1997 WL 276063 at *6 (S.D.N.Y. May 1, 1997) (Batts, D.J. & Peck, M.J.); *Ehinger v. Miller,* 942 F.Supp. 925, 931–32 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.).

Second, the defendant must show prejudice resulting from counsel's performance. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69.

Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695–96, 104 S.Ct. at 2069; *see also, e.g., DeLuca v. Lord,* 77 F.3d 578, 584 (2d Cir.), *cert. denied,* 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996); *Nieves v. Kelly,* 990 F.Supp. at 262–63; *Yanez v. Keane,* 1998 WL 481062 at *8; *Rodriguez v. Hanslmaier,* 982 F.Supp. 279, 1997 WL 687954 at *6; *Boyd v. Hawk,* 965 F.Supp. 443, 1997 WL 276063 at *6; *Ehinger v. Miller,* 942 F.Supp. at 932.

"In the context of a guilty plea, [the second *Strickland* prong of] prejudice means 'a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have instead insisted on going to trial.'" *Ordonez v. United States* 1998 WL 292317 at *2 (quoting *Hill v. Lockhart,* 474 U.S. at 59,

106 S.Ct. at 370); *see also, e.g., Sims v. Superintendent,* 887 F.Supp. at 574.

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Strickland v. Washington, id.,* at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington,* 466 U.S. at 690–91, 104 S.Ct. at 2066.

> In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. at 2066; *see also, e.g., Nieves v. Kelly,* 990 F.Supp. at 263.

Finally, the Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one. ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069; *see also, e.g., Nieves v. Kelly,* 990 F.Supp. at 263; *Yanez v. Keane,* 1998 WL 481062 at *9; *Rodriguez v. Hanslmaier,* 982 F.Supp. 279, 1997 WL 687954 at *7; *Boyd v. Hawk,* 965 F.Supp. 443,

1997 WL 276063 at *6; *Ehinger v. Miller,* 942 F.Supp. at 932.

### B. *Application of the Strickland Standard to Tapia–Garcia's Ineffective Assistance Claim*

Tapia–Garcia's ineffective assistance claim is based on his trial attorney's failure to move to vacate the information on the ground that Tapia–Garcia's prior conviction for attempted murder did not qualify as an "aggravated felony" under 8 U.S.C. § 1326(b)(2). (Pet. at 7–11.)

In 1985—when Tapia–Garcia was convicted of attempted murder—8 U.S.C. § 1326 provided that:

> Any alien who -
>
> > (1) has been arrested and deported or excluded and deported, and thereafter
> >
> > (2) enters, attempts to enter, or is at any time found in, the United States
> >
> > . . .
>
> shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

8 U.S.C.A. § 1326 (1985) (current version at 8 U.S.C. § 1326 (1996)).

In 1988, § 1326 was amended to provide enhanced penalties—up to 15 years (now 20 years) imprisonment—for aliens who reenter the United States after having been deported after committing an "aggravated felony." *See* Anti–Drug Abuse Act of 1988 ("ADAA"), Pub.L. No. 100–690, § 7345(a)(2), 102 Stat. 4181, 4471 (1988). Thus, 8 U.S.C. § 1326 now provides in pertinent part:

> (a) Subject to subsection (b) of this section, any alien who -
>
> > (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter.
> >
> > (2) enters, attempts to enter, or is at any time found in, the United

States, ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection -

(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both; ...

8 U.S.C. § 1326(a)-(b).

The 1988 amendment to the Immigration & Naturalization Act also added a definition of "aggravated felony" to 8 U.S.C. § 1101, as follows:

The term "aggravated felony" mean *murder*, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, *or any attempt or conspiracy to commit any such act,* committed within the United States.

**3.** *See, e.g., United States v. Baca–Valenzuela,* 118 F.3d 1223, 1225 (9th Cir.1997); *United States v. Gomez–Rodriguez,* 96 F.3d 1262, 1265 (9th Cir.1996); *Scheidemann v. INS,* 83 F.3d 1517, 1523 (3d Cir.1996); *United States v. Cabrera–Sosa,* 81 F.3d 998, 1000 (10th Cir.), *cert. denied,* 519 U.S. 885, 117 S.Ct. 218, 136 L.Ed.2d 151 (1996); *United States v. Troncoso,* 23 F.3d 612, 614 (1st Cir.1994), *cert. denied,* 513 U.S. 1116, 115 S.Ct. 912, 130 L.Ed.2d 793 (1995); *United States v. Kingston,* 966 F.Supp. 183, 185 (S.D.N.Y.1997).

**4.** In 1990 the definition was amended to read: "The term 'aggravated felony' means murder ... or any attempt or conspiracy to commit any such act." 8 U.S.C.A. § 1101(a)(43) (1991). In 1994, the section was changed again: "The term 'aggravated felony' means—(A) murder .... and (Q) an attempt

Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7342, 102 Stat. 4181, 4469 (1988) (emphasis added). The 1988 amendments did not contain an effective date.[3] The definition of aggravated felony has thereafter been expanded, but through all amendments has included murder and attempted murder.[4]

Tapia–Garcia argues that when he was convicted of attempted murder in 1985, the "aggravated felony" provision of 8 U.S.C. § 1326(b) did not exist, and the definition in § 1101 of "aggravated felony" as including "attempted murder" was not enacted until 1988. He claims that the 1985 date of the attempted murder conviction, and not the date of his deportation (1993) or illegal reentry (also 1993), controls, and makes the attempted murder conviction inapplicable under §§ 1101 and 1326. (Pet. at 7–9.)[5]

The Second Circuit has held that " § 1326(b) does not create a separate criminal offense, but is a sentence-enhancement provision for the offense defined in § 1326(a)." *United States v. Cole,* 32 F.3d 16, 18 (2d Cir.) (citing cases), *cert. denied,* 513 U.S. 993, 115 S.Ct. 497, 130 L.Ed.2d 407 (1994); *accord, e.g., United States v. Westcott,* 966 F.Supp. 186, 189 (S.D.N.Y.1997) (Sotomayor, D.J.). As the Second Circuit explained:

or conspiracy to commit an offense described in this paragraph." 8 U.S.C.A. § 1101(a)(43) (1995). Today, the section reads: "The term 'aggravated felony' means.... (A) murder.... and (U) an attempt or conspiracy to commit an offense described in this paragraph." 8 U.S.C.A. § 1101 (1998).

**5.** Curiously, Tapia–Garcia's Petition focuses on whether the 1990 amendment to § 1101 was retroactive. (Pet. at 7–9.) Because "aggravated felony" consistently has been defined since its first enactment in 1988 to include attempted murder, the correct issue is whether the *1988* enhancement of the crime of reentry and the 1988 definition of aggravated felony can apply to a pre–1988 underlying conviction in connection with a post–1988 illegal reentry.

Section 1326 prohibits a deported alien from reentering the United States without the express consent of the Attorney General. 8 U.S.C. § 1326. Subsection (a) sets forth the elements of the offense, provides for the possibility of a fine, and establishes a two-year maximum sentence of imprisonment. Subsection (b) provides for enhanced penalties depending on the offender's criminal history. If the alien was deported following a felony conviction, the statutory maximum is five [now 10] years; if the alien was deported following an aggravated-felony conviction, the statutory maximum is fifteen [now 20] years.

*United States v. Cole,* 32 F.3d at 18.

Accordingly, all of the Courts of Appeals that have considered the issue have held that § 1326(b)'s sentencing enhancement can be utilized where the illegal reentry occurred after 1988, even if the sentence-enhancing felony or aggravated felony conviction occurred prior to 1988. *See, e.g., United States v. Lozano,* 138 F.3d 915, 916–17 (11th Cir.1998); *United States v. Baca–Valenzuela,* 118 F.3d 1223, 1228–29 (8th Cir.1997) ("Despite the absence of an explicit effective date provision in the 'aggravated felony' definition, we believe it is clear by necessary implication from the language and design of the Act as a whole that Congress intended to include ... convictions prior to 1988.... Because the enhanced penalties applied immediately on the date of enactment [November 18, 1988] to any alien who attempted to enter the United States (without consent after deportation subsequent to conviction for an aggravated felony), it seems clear that the aggravated felonies referred to must include those occurring before November 18, 1988. It would have been impossible for an alien entering, attempting to enter, or being found in the United States on that date to have a prior conviction for an aggravated felony if such aggravated felonies included only offenses committed after that date. Thus, the only interpretation of the definition of aggravated felony, 8

U.S.C. § 1101(a)(43), which would also give meaningful effect to this substantive provision employing the term, 8 U.S.C. § 1326(b), is that 'aggravated felony' included pre-enactment [*i.e.,* pre–1988] convictions."); *United States v. Campbell,* 94 F.3d 125, 126–28 (4th Cir.1996), *cert. denied,* 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997); *Scheidemann v. INS,* 83 F.3d 1517, 1523–25 (3d Cir.1996) ("Congress clearly intended the definition of 'aggravated felony' to apply to pre-enactment as well as post-enactment convictions."); *United States v. Cabrera–Sosa,* 81 F.3d 998, 1000–01 (10th Cir.) (rejecting defendant's argument that "aggravated felony" does not include convictions prior to 1988 enactment of ADAA), *cert. denied,* 519 U.S. 885, 117 S.Ct. 218, 136 L.Ed.2d 151 (1996); *United States v. Saenz–Forero,* 27 F.3d 1016, 1020–21 (5th Cir.1994) (defendant's 1985 conviction could be considered an "aggravated felony"); *United States v. Troncoso,* 23 F.3d 612, 614 (1st Cir.1994) ("Given the law of this circuit and the plain meaning of the provision, we affirm the district court's application of section 1326(b)(2) to Appellant's [pre-ADAA] conviction."), *cert. denied,* 513 U.S. 1116, 115 S.Ct. 912, 130 L.Ed.2d 793 (1995); *United States v. Arzate–Nunez,* 18 F.3d 730, 734–35 (9th Cir.1994) (defendant's "reentry is a new offense for due process purposes, and also for ex post facto purposes," and so his 1985 felony conviction constitutionally may be used to enhance his sentence under § 1326(b) for 1992 illegal reentry); *United States v. Kingston,* 966 F.Supp. 183, 185 (S.D.N.Y. 1997) ("[E]very federal circuit court to have considered this issue has concluded that the 1988 definition of aggravated felony applies to the specified crimes, no matter when committed."); *United States v. Pryce,* 95 Cr. 808, 1996 WL 122438 at *2 (S.D.N.Y. March 20, 1996) (there is no ex post facto problem in § 1326(b), because "the words 'aggravated felony' are simply a definition referring to previously defined crimes, as 8 U.S.C. § 1101(a)(43) makes clear, and 8 U.S.C. § 1326(b)(2) and Sen-

tencing Guidelines § 2L.2(b)(2) use the term 'aggravated felony' to refer to convictions of such previously defined crimes, not as a reference to a newly crated crime").

Tapia–Garcia relies on the Ninth Circuit's decision in *United States v. Gomez–Rodriguez*, 96 F.3d 1262 (9th Cir.1996) (en banc). (Pet. at 7–8.) There is a circuit split as to whether, as a matter of statutory interpretation, certain of the crimes added to the § 1101(a)(43) definition of aggravated felony in *1990* support enhancement under § 1326(b) where the underlying crime occurred prior to 1990. For an analysis and discussion of the Circuit decisions that reached a contrary result to the Ninth Circuit, *see United States v. Westcott*, 966 F.Supp. at 189–91. I need not decide which view of the 1990 amendment is correct, however, because attempted murder was included in the definition of "aggravated felony" from initial enactment of the aggravated felony enhancement in 1988. *See United States v. Kingston*, 966 F.Supp. at 185 ("The [Ninth Circuit] in *Gomez* did not address whether the 1988 definition of aggravated felony applies retroactively, but interpreted the effective date provision of 1990 amendments to section 1101(a)(43) to preclude retroactive application of certain of the newly defined aggravated felonies. Recognizing that there was no similar effective date provision in the 1988 Anti–Drug Abuse and Immigration Act, the *Gomez* Court itself suggested that retroactive application of the earlier [*i.e.,* 1988] defined aggravated felonies would be appropriate." Finding "no support for [defendant's] position in logic or in precedent," Judge Sotomayor held that defendant's 1983 drug conviction rendered him an aggravated felon under § 1326(b).). As noted above, the Courts of Appeals all have held that for the aggravated felonies defined in 1988—which include attempted murder—pre–1988 convictions can be used for sentence enhancement purposes under 1326(b). *See* cases cited above.

Here, Tapia–Garcia illegally re-entered the United States in may 1993 after having been convicted of attempted murder in 1985 and deported in March 1993. Under 8 U.S.C. § 1101(a)(43), from its enactment in 1988 through its current amendments, attempted murder is an "aggravated felony." Before Tapia–Garcia's August 1995 plea agreement, and certainly before his November 1996 sentencing, the Courts of Appeals held that 8 U.S.C. § 1326(b)(2) applies to pre–1988 aggravated felonies including attempted murder, and authorizes an enhanced sentence of up to 20 years. Had Tapia–Garcia's counsel challenged the information or his sentence on the basis that his 1985 attempted murder conviction could not be considered under 1326(b), the challenge would not have succeeded. Thus, Tapia–Garcia cannot show the "prejudice" prong of the *Strickland* test for ineffective assistance of counsel. Accordingly, Tapia–Garcia's ineffective assistance of counsel habeas claim should be dismissed on the merits (as well as because of the procedural bar discussed in the prior section).

### III. EVEN IF TAPIA–GARCIA'S SENTENCING CLAIMS WERE NOT PROCEDURALLY BARRED, THEY SHOULD BE DENIED AS FRIVOLOUS

Tapia–Garcia claims that he is entitled to have deportation proceedings begin now, rather than at the end of his prison term; he therefore requests the Court to either order that he be immediately deported, rather than be required to serve out his sentence, or order the government to show cause why they have not instituted deportation proceedings. (Pet. at 12–13.) Tapia–Garcia bases his claim that he is entitled to be deported before he completes his present sentence on: (1) Section 439 of the April 24, 1996 Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1276–77 (April 24, 1996), which amended 8 U.S.C. § 1252(c)(2), and (2) Attorney Gen-

eral Janet Reno's Memorandum dated April 28, 1996. (*Id.*) Alternatively, Tapia–Garcia requests that, as he ultimately will be deported at the conclusion of his prison term, and as deportation is a severe penalty, the Court grant him a downward departure from his current sentence. (Pet. at 14.) He bases his claim that he is entitled to a downward departure on 18 U.S.C. § 3553(b) and Sentencing Guideline § 5K2.0. (Pet. at 14.)

As discussed in Point I above, Tapia–Garcia's sentencing claims are procedurally barred because they should have been, but were not, raised on direct appeal. Moreover, even if not procedurally barred, it is an open question in the Second Circuit as to "whether collateral attack is available under § 2555 where petitioner 'was sentenced within the appropriate Guideline range and the [alleged] error of law resulted only in the court foregoing the exercise of its discretion to impose a lesser sentence.'" *Sicurella v. United States,* 157 F.3d 177, 179 (2d Cir.1998) (quoting *Werber v. United States,* 149 F.3d 172, 177 n. 4 (2d Cir.1998)). Nevertheless, in the interest of completeness, the Court will address briefly the merits of Tapia–Garcia's sentencing claims.

### A. *Tapia–Garcia's Deportation Claim is Frivolous*

Tapia–Garcia concedes in his petition that deportation proceedings against him have yet to begin (Pet. at 13), but he cites to 8 U.S.C. § 1252(i) for the proposition that the Attorney General is required to "begin any deportation proceeding as expeditiously as possible after the date of conviction." (Pet. at 13.) Tapia–Garcia also relies on the AEDPA's amendment of 8 U.S.C. § 1252(c)(2) to require that once a final order of deportation is made against aliens convicted of certain enumerated offenses, the Attorney General shall have 30

days to effect the alien's removal. (Pet. at 12.) Tapia–Garcia requests that the Court compel the Attorney General to begin deportation proceedings as soon as possible, so that he can obtain a final order of deportation and thus have his sentence cut short by being deported within thirty days of the issuance of that order. (Pet. at 12–13.) However, his request for this relief is terribly misguided.

■ First, with regard to § 1252(i), Tapia–Garcia overlooked the AEDPA's amendment to this section. Prior to his sentencing and direct appeal, the AEDPA inserted the following language to § 1252(i): "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." AEDPA § 436(b)(1).[6] The language of this section deprives an alien of standing to assert a claim under § 1252(i) to challenge the Attorney General's actions with regard to the commencement of deportation proceedings. *See, e.g., Campos v. INS,* 62 F.3d 311, 314 (9th Cir.1995); *Hernandez–Avalos v. INS,* 50 F.3d 842, 844 (10th Cir.), *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 49 (1995); *Pedraza v. INS,* No. C97–0690, 1997 WL 118261 at *1 & n. 1 (N.D.Cal. March 4, 1997); *Echenique v. Perryman,* No. 95 C 4189, 1996 WL 554546 at *3 (N.D.Ill. Sept.24, 1996). Consequently, even if the Attorney General has not expeditiously begun deportation proceedings against him, Tapia–Garcia cannot resort to the federal courts to compel the Attorney General to provide him with a deportation hearing.

■ Furthermore, Tapia–Garcia's reliance on § 1252(c)(2) is misplaced. Since deportation proceedings in his case have yet to commence, the provisions of the Illegal Immigration Reform and Immi-

6. This provision was moved to 8 U.S.C. § 1229(d)(1) and (2) with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). As the language remained the same in this new section, the result is the same under the AEDPA and IIRIRA.

grant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), apply to his case. *See* (IIRIRA § 3099c) (provisions of IIRIRA apply to deportation proceedings commencing after April 1, 1997, the effective date of IIRIRA); *Henderson v. INS,* 157 F.3d 106, 117 (2d Cir.998); *Kalaw v. INS,* 133 F.3d 1147, 1149–50 (9th Cir.1997); *Skutnik v. INS,* 128 F.3d 512, 513 (7th Cir.1997); *Mojica v. Reno,* 970 F.Supp. 130, 158 (E.D.N.Y. 1997), *aff'd in part, dismissed in part, Henderson v. INS,* 157 F.3d 106. These provisions clearly indicate that the requirement that the Attorney General deport an alien within a specified time begins to run only after the alien is released from any term of imprisonment he is serving:

> (1)(A) Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred as to as the "removal period").
>
> (1)(B) The removal period begins on the latest of the following: ....
>
>> (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>
> . . .
>
> (4)(A) [T]he Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment.

8 U.S.C. § 1231(a)(1)(A)-(B), § 1231(a)(4)(A).

Thus, the statutory scheme calls for imprisonment on the conviction for illegal reentry of someone who previously had committed an aggravated felony, and deportation only after completion of the prison term. 8 U.S.C. § 1326, 8 U.S.C. § 1231(a)(1)(A)-(B), 8 U.S.C. § 1231(a)(4)(A). Tapia–Garcia's statutory interpretation would mean that the only penalty imposed on an alien found guilty of illegal reentry into the United States would be a free airline ticket to the alien's home. That is not the law, nor should it be.

■■■ There is an exception to the general rule that the Attorney General may not deport an imprisoned alien. The Act gives the Attorney General discretion to earlier deport a nonviolent alien if that is in the "best interest of the United States":

> The Attorney General is authorized to remove an alien in accordance with applicable procedures under this Chapter before the alien has completed a sentence of imprisonment—(i) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense ..., and (II) the removal of the alien is appropriate and in the best interest of the United States.

8 U.S.C. § 1231(a)(4)(B).

That section, however, explicitly states that there is no private right of action: "No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien." 8 U.S.C. § 1231(a)(4)(D).

Thus, while the statute gives the Attorney General discretion to initiate deportation proceedings for non-violent offenders who are incarcerated, it does not give an incarcerated alien a right to be deported nor any cause of action to require the Attorney General to exercise her discretion. It is not surprising that the Attorney General apparently has determined not to seek to exercise discretion for early deportation for an alien—Tapia-Garcia—described by the courts as a "one-man crime wave." Tapia–Garcia is not entitled to be deported before he completes his sentence. This aspect of his habeas claim is frivolous. *See, e.g., Thye v. United States,* 109 F.3d 127, 128–29 (2d Cir.1997) (under former § 1252(h)(2)(A), the predecessor to § 1231(a)(4), alien does not have private right of action to compel the Attor-

ney General to deport alien prior to completion of prison term or even to exercise her discretion (citing cases)); *United States v. Marin–Castaneda*, 134 F.3d 551, 556 (3d Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 1855, 140 L.Ed.2d 1103 (1998); *United States v. Bedoya–Taborda*, 950 F.Supp. 612, 613 (S.D.N.Y.1997).[7]

### B. *Tapia–Garcia's Request for a Downward Departure in Sentencing is Without Merit*

■ Tapia–Garcia pleads that the district court depart downward from the Sentencing Guidelines, pursuant to its authority under the Sentencing Reform Act, 18 U.S.C. § 3553(b), and Sentencing Guideline § 5K2.0. (Pet. at 14.) Tapia–Garcia argues that, because he will ultimately be deported after he has completed his sentence, and because deportation is a severe penalty, the Court should grant a downward departure. (Pet. at 14.)

■ Tapia–Garcia is correct that "both the Guidelines and the Sentencing Reform Act allow 'the sentencing court [to] impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." ' " *United States v. Restrepo*, 999 F.2d 640, 643 (2d Cir.), *cert. denied*, 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993). The Second Circuit has held, however, that "[d]eportation alone does not constitute an extraordinary consequence that would justify a downward departure." *United States v. Tejeda*, 146 F.3d 84, 88 (2d Cir.1998) (cit-

ing *United States v. Restrepo*, 999 at 647); *see also, e.g., United States v. Marin–Castaneda*, 134 F.3d 551, 554–55 (3d Cir. 1998) (no basis for downward departure based on defendant's willingness to be deported where such departure not requested by the government, and defendant had no plausible basis to contest deportation) (citing cases). Since Tapia–Garcia's claim that he is entitled to a downward departure is based only on the fact that he ultimately will be deported, it should be denied. Moreover, in light of his status as a "one-man crime wave," and Judge Baer's comments at sentencing, the Court doubts that even if he had the discretion to do so, Judge Baer would sentence Tapia–Garcia to anything less than the Guidelines maximum.

### *CONCLUSION*

For the reasons set forth above, I recommend that Tapia–Garcia's habeas corpus petition pursuant to 28 U.S.C. § 2255 be denied as procedurally barred and/or on the merits.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Harold Baer, Jr., 500 Pearl Street, Room 2230,

---

**7.** Based on the above statutes and discretion in the Attorney General, the Court need not address Tapia–Garcia's reliance on an April 28, 1995 Attorney General memorandum that he cites for the proposition that the government " 'is committed to effecting the deportation of criminal aliens from the United States as expeditiously as possible.' " (Pet. at 13, quoting Attorney General's Memorandum.) Such policy of "expedition" cannot, obviously, supersede or supervene the statutory man-

dates of 8 U.S.C. § 1231(a). *See generally United States v. Zapata*, 135 F.3d 844, 847 (2d Cir.1998) (rejecting position that Attorney General's memorandum established a uniform policy which must be applied to all defendants who consent to deportation); *United States v. Prince*, 110 F.3d 921, 926 (2d Cir.) (no evidence any "policy" set forth in the Attorney General's Memorandum was implemented in the E.D.N.Y.), *cert. denied*, — U.S. —, 118 S.Ct. 188, 139 L.Ed.2d 127 (1997).

388

and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Baer. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

November 3, 1998.