Hector MARTINEZ, Petitioner,

v.

Hans WALKER, Superintendent of Auburn Correctional Facility, Respondent.

No. 00–CV–6603.

United States District Court, W.D. New York.

March 29, 2005.

Hector Martinez, Auburn, NY, pro se.

Marian Whitney Payson, Esq., Assistant Attorney General Office of the Attorney General, Rochester, NY, Frank J. Clark, Esq., District Attorney of Erie County, Buffalo, NY, for Defendant.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Hector Martinez ("Martinez") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in County Court on five counts of first degree burglary and three counts of second degree assault. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 13, 1997, at about 9:30 p.m., Robert Sanders ("Sanders") and Paul Frontuto ("Frontuto") ran into Martinez while on their way to Sanders's mother's home in the City of Buffalo.[1] Martinez, who had known Sanders for about four years, informed the two men that certain individuals owed him money and that he wanted to collect it. Martinez asked them to go with him to 273 Amherst Street where the alleged debtors (John Surman ("Surman"), Joseph Drury ("Drury") and Jeffrey Evert ("Evert")) resided.

Jennifer Perkins ("Perkins") lived a few houses up from 273 Amherst Street at 285 Amherst Street. Martinez, whose girlfriend was friends with Perkins, also lived on Amherst Street about five houses away. On the night of October 13, Perkins saw Martinez, who is Hispanic, walking with two white men toward 273 Amherst Street from the direction of Martinez's house. As the three passed by Perkins's house, Martinez briefly stopped to talk to her. Perkins described Martinez as wearing a blue-and-white jersey, a grey "hoody" sweatshirt, and white jeans. She stated that he was carrying a bookbag and that his companions were both wearing black jeans. Martinez informed Perkins that if the "5–0" (*i.e.*, the police) came by, she was to say that she did not see or hear anything.

After issuing that warning to Perkins, Martinez and his cohorts walked up the driveway of 273 Amherst Street. Perkins saw them enter the building from a door on the driveway and then walk upstairs together. Sanders testified that he was wielding a hammer, Martinez, a pistol, and Frontuto, a hammer.[2]

---

1. The recitation of facts is based upon the testimony given at Martinez's jury trial held in Erie County Court in March 1998. Citations herein to "T.___" refer to the trial transcript.

2. After being indicted, Sanders pleaded guilty to a class D felony and received a reduced sentence of a determinate seven-year term in prison in return for his cooperation with the district attorney's office. If Sanders had been tried on the charges in the indictment and found guilty, he faced the possibility of twenty-five years in prison.

Surman, the first victim, testified that he heard a knock at his apartment door on the night of October 13 at about 10 p.m. As he opened the door, he was immediately shoved into his apartment by three men. Surman was unable to identify Martinez from a photo array, but he testified at trial that one of his assailants was white and one Hispanic; he could not remember the race of the third assailant. Surman testified that the Hispanic man had a gun and the other two intruders had a hammer and a club. According to Surman, the Hispanic man beat him and demanded, "Where's the stuff?" (Sanders, the accomplice, testified that Martinez was asking where the drugs were.) Surman replied that he did not know what the man was talking about.

Eventually, the three perpetrators ceased their attack on Surman and went across the hall to Drury and Evert's apartment. Surman attempted to escape out a back window but could not open the window due to the defensive wounds on his hands. Surman then hid in a closet.

Drury, who lived across the hall with Evert, testified that minutes after he heard doors being slammed, a Hispanic man wearing black jeans and a flannel shirt broke into his apartment. Drury was unable to identify Martinez from a photo array. The Hispanic man aimed his gun at them and demanded, "Where's the shit?" According to Drury, the Hispanic man pistol-whipped him in the jaw causing him to fall to the floor. Drury testified that he felt blows to his head, back and legs. He could not recall with certainty whether there were two or three assailants. Drury stated that he was dragged, along with Evert, down the hall to Surman's apartment where he was struck with a hammer on his legs.

Evert, the third victim, testified that he heard the door being kicked in and that the next thing he saw was a gun in his face. Evert recalled that the person with the gun was Hispanic. He definitely recalled there being one other intruder but could not recall whether there was a third. After being forced to lie on the ground by the Hispanic man, Evert was struck in the head with a hammer and a gun.

Evert testified that he and Drury were led across the hallway to Surman's apartment. One of the assailants informed Drury that he had better answer some questions "right" or he would have a "cap popped into his head." A gun was displayed when the man said this. The intruders then asked Evert, "So you have kids?" Evert answered yes and the intruders hit him in the head several times and said, "There you go, now go back to your wife and kids." That was the end of the assault.

Sanders testified that he and Martinez removed a stereo from Drury's apartment. After the attack, Drury noticed that his stereo components were missing. Perkins testified that she saw Sanders and Frontuto walking away from 273 Amherst Street toward Martinez's house; Sanders was carrying a stereo and Frontuto had the same bookbag that Martinez was carrying when Martinez stopped to talk to her prior to the attacks.

The jury returned a verdict convicting Martinez of five counts of first degree burglary and three counts of second degree assault. Martinez was sentenced to an indeterminate term of twenty years to life imprisonment.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction on November 12, 1999. *People v. Martinez,* 266 A.D.2d 847, 698 N.Y.S.2d 806 (4th Dept.1999). The New York Court of Appeals denied leave to appeal on June 7,

1999. *People v. Martinez*, 93 N.Y.2d 974, 695 N.Y.S.2d 60, 716 N.E.2d 1105 (1999).

This federal habeas petition followed. For the reasons set forth below, the petition is denied.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his Federal constitutional claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### Merits of the Petition

### Claims I and II: Improper admission of accomplice testimony and insufficient corroborating testimony

█ Because these two claims are related, I will consider them together. Martinez contends that the testimony of Sanders, his accomplice, was based upon "perjury and duress for a favorable sentence." Petition at 3 (Docket # 1). On cross-examination, Sanders was asked, "Actually, you would say anything here to get that reduction [in prison time], wouldn't you?" T.133. Sanders replied,

"Yes." T.132. On re-direct examination, Sanders explained that he "didn't mean it as [he]'d say anything to get [himself] out of trouble" and that he "didn't really understand the question." T.156. Sanders averred that he was telling the truth about the events of October 13, 1997, and admitted that he was attempting to "cut [his] legal losses as a result of that testimony." T.156. Martinez cannot establish that Sanders, in fact, perjured himself based upon one answer that Sanders gave to defense counsel's question on cross-examination. The statement at issue goes to the weight of Sanders's testimony, rather than its admissibility; the jury could properly consider it when determining whether to credit Sanders's testimony about the burglary.

█ With respect to Martinez's claim that there was insufficient evidence to corroborate the accomplice testimony, respondent argues that such a claim does not present a constitutional question and is not cognizable on habeas review. Because Martinez's claim is based solely on the New York state law accomplice corroboration requirement, *see* N.Y.Crim. Proc. Law § 60.22,[3] it does not constitute a claim of a violation of a federal constitutional right. Indeed, there is no federal constitutional rule requiring the corroboration of accomplice testimony. *See Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."). A conviction may be sustained on

---

3. New York Criminal Procedure Law § 60.22(1) provides as follows:
 1. A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.
 2. An "accomplice" means a witness in a criminal action who, according to evidence

adduced in such action, may reasonably be considered to have participated in:
 (a) The offense charged; or
 (b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged.
 N.Y.Crim. Proc. Law § 60.22(1).

the basis of the testimony of a single accomplice, provided that testimony is "not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir.1993) (citing *United States v. Parker*, 903 F.2d 91, 97 (2d Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990)). "Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." *Id.* Consequently, Martinez's claim based on the lack of corroborative testimony must be dismissed. *Accord, e.g., Mariani v. Kelly*, 2001 WL 1860961, at *4 (N.D.N.Y. Feb.2, 2001) ("Petitioner's claim that the accomplice testimony was not sufficiently corroborated alleges purely a matter of state law, and is thus not cognizable on federal habeas corpus review.") (footnote omitted) (citing *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

### Claim III: Improper sentencing as persistent felony offender

■ Martinez argues that his attempted burglary conviction of October 22, 1994, "does not fit the criteria for persistent felony status and conviction." Petition at 6 (Docket # 1). According to Martinez, he was sentenced to "misdemeanor reduced county time which conviction does not toll the scale or criteria to be adjudged as a persistent felony offender status under the guidelines." *Id.* At his sentencing hearing, the judge stated that the felony information indicated that there was a period of incarceration from October 24, 1994,

through September 21, 1995, at the Erie County Correctional Facility with respect to the October 22, 1994 attempted burglary conviction. S.3.[4] I note that neither Martinez nor his attorney challenged any of the allegations in the felony information. *See* S.3–4.

Respondent asserts the defense of nonexhaustion with regard to this claim, and Martinez concedes that he did not present this claim to the state courts. *See* Petition at 6 (Docket # 1). Because Martinez could return to state court and file a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.20 on the basis that he was sentenced illegally, this claim remains unexhausted.

Pursuant to 28 U.S.C. § 2254(b)(2), district courts now have the discretion to dismiss unexhausted claims on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Although the Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. *See Naranjo v. Filion*, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003) (collecting cases). A minority of courts have expressed the test as whether " 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." *Id.* (quoting *Hernandez v. Lord*, 2000 WL 1010975, at *4–5 & n. 8 (S.D.N.Y. July 21, 2000) and citing cases). Because

---

**4.** Citations to "S.___" refer to the transcript of the sentencing hearing held on April 30, 1998.

Martinez's sentencing claim is precluded by the clear language of the Penal Law, it cannot pass muster under either standard.

■ First of all, I note that Martinez in fact was sentenced as a persistent violent felony offender under § 70.08, not a persistent felony offender under § 70.10; the result I must reach is the same, however, under either statutory section. New York Penal Law § 70.08 sets forth the criteria for sentencing a defendant as a persistent violent felony offender: the defendant must be "convicted of a violent felony offense as defined in subdivision one of section 70.02 after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04." N.Y. Penal Law § 70.08(1)(a).

Section 70.04(1)(b) of the Penal Law provides that valid predicate convictions include a New York state conviction for a class A felony, a New York State conviction for a violent felony offense as defined in § 70.02(1), and a conviction for an out-of-state offense which includes all of the essential elements of any such felony for which a sentence to a term of imprisonment in excess of one year was authorized and "is authorized in this state irrespective of whether such sentence was imposed[.]" N.Y. Penal Law § 70.04(b)(i). Thus, the nature of the sentence actually imposed for the 1994 Erie County conviction for attempted burglary, a violent felony offense under § 70.02(1)(a), is irrelevant to determining whether it constitutes a valid predicate felony for purposes of persistent violent felony offender status because the 1994 conviction was a New York State conviction. Martinez's claim that he was sentenced illegally must be dismissed.

## Claim IV: Failure to disclose *Brady* material

■ Martinez asserts that the prosecution failed to turn over to the defense certain documents that constituted potentially exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("*Brady*"), and *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961) ("*Rosario*").

Respondent argues that these claims are unexhausted; Martinez concedes that he did not raise either claim in the courts below. Respondent also correctly asserts that the claims are subject to a state procedural default. First, Martinez is procedurally barred from raising the *Brady/Rosario* claims in the New York Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. *See* N.Y. Court Rules § 500.10(a) (authorizing only one request for review of a conviction). Although Martinez could file a collateral motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, it would be denied because the claims were apparent from the trial record and could have been raised on direct appeal. *See* N.Y.Crim. Proc. Law 440.10(2)(c) (barring collateral review if claim could have been raised on direct review). Because Martinez has no corrective process available to him were he to return to state court in order to exhaust the claim, the claims are "deemed exhausted" but procedurally defaulted. *See St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir.2004) (citing *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)).

■ Federal habeas review of the procedurally defaulted claim is available "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *accord St. Helen,* 374 F.3d at 184. I need not address whether cause or prejudice exists to ex-

cuse the procedural default of the *Rosario* claim because the claim is not cognizable on habeas review.[5]

 Turning to the *Brady* claim, Martinez does not specifically address respondent's procedural default argument but asserts that he failed to raise the claim because he is "unschooled" in the law. *See* Petition at 6 (Docket # 1). The Supreme Court has stated that " 'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis in original). In light of this principle, courts consistently have held that ignorance of the law does not suffice to establish "cause" to excuse a procedural default. *E.g., Marone v. United States*, 10 F.3d 65, 67 (2d Cir.1993) ("[T]he requirement that 'cause' be external to the petitioner does not encompass a petitioner's alleged belated understanding of his rights."); *accord Tapia–Garcia v. United States* 53 F.Supp.2d 370, 373 (S.D.N.Y.1999) (holding that "ignorance of the law is not sufficient to sustain the petitioner's burden [of showing cause] in a habeas case"); *Sosa v. United States*, 2003 WL 1797885, at *6 (S.D.N.Y. Apr.3, 2003) (finding that procedural default cannot be overcome by cause based on the fact that the petitioner may have been unaware

himself of legal basis for appeal; petitioner's "own ignorance does not amount to cause justifying an exception to his default"). Because the first prong of the cause and prejudice test is not satisfied, it is unnecessary to discuss whether Martinez suffered prejudice from his default. *Murray v. Carrier*, 477 U.S. 488, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1989) (upholding "adherence to the cause and prejudice test 'in the conjunctive' "). Lastly, Martinez has not made a factual showing of "actual innocence." As a consequence, the *Brady* claim is barred from further habeas review.

 In any event, I note that the claim is without merit. "There are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Martinez complains that prosecutor showed witness Jennifer Perkins photographs of the area outside of the burgled house where she saw Martinez and his cohorts. Defense counsel at first objected to the prosecutor's reference to the photographs because they were not in evidence. However, the photographs subsequently

---

**5.** Martinez's *Rosario* claim does not present an error of constitutional magnitude and therefore is not cognizable on habeas review. *See Lyon v. Senkowski*, 109 F.Supp.2d 125, 139 (W.D.N.Y.2000); *Sutherland v. Walker*, 1999 WL 1140870, at *9 (S.D.N.Y. Dec.10, 1999). Unlike a *Brady* claim, a *Rosario* claim derives solely from a New York state law right. *Lyon*, 109 F.Supp.2d at 139; *see also Copes v. Schriver*, 1997 WL 659096, at *4 (S.D.N.Y. Oct.22, 1997) (*Rosario* violation does not establish a constitutional violation). The prosecution's disclosure requirements as set forth in *Rosario* are more expansive than

those later defined in *Brady* and its progeny. *See Lyon*, 109 F.Supp.2d at 139 (*Rosario* held that the prosecution must disclose any prior statement of its witness, regardless of whether it is favorable to the accused.). To the extent that *Rosario* exceeds federal constitutional requirements, it defines state law, and the prosecutor's failure to turn over *Rosario* material is not cognizable on federal habeas review. *Id.; see also Green v. Artuz*, 990 F.Supp. 267, 274 (S.D.N.Y.1998) (*citing United States ex. rel. Butler v. Schubin*, 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd*, 508 F.2d 837 (2d Cir. 1975)).

were received into evidence without any objection by defense counsel.

On these facts, Martinez cannot establish any of the three prerequisites of a *Brady* claim. First, he cannot demonstrate that there has been a "suppression" of evidence because there is no indication that the photographs were not made available to the defense prior to trial. Second, Martinez cannot establish the "favorable to the accused" element because he has not explained how the photographs of the area outside the crime scene were remotely exculpatory. Finally, because Martinez cannot show that favorable evidence was withheld by the prosecution, he is unable to show prejudice to the defense.

## CONCLUSION

For the reasons stated above, Hector Martinez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Martinez has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**